PEARIS v. COVILLAUD et al.

Where the plaintiff gave his note, payable four months after date, in consideration of which the defendants executed a contract for a deed of land, upon payment of the note; *Held*, that after a tender of the deed, and demand and refusal to pay the note after its maturity, the plaintiff had forfeited his right to insist on a performance of the contract.

Tenants in common of land are not bound by the acts of a co-tenant in accepting a balance of the purchase money and promising a deed, after the right thereto had become forfeited.

*It seems* that the lapse of over four years from the maturity of the note, before action commenced for a specific performance, bars the action by limitation, and goes far to make out an abandonment of the purchase by the plaintiff.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

The plaintiff filed his bill, September 22d, 1855, for a specific performance, against C. Covillaud and others, on a contract to convey to him certain lots in the city of Marysville. The contract sets forth the payment of $325, and the receipt of plaintiff's note for $325, "payable at four months' date," and is dated February 18th, 1850. Since the execution of the contract, certain of the defendants have become interested, as tenants in common, in the land by purchase and inheritance without notice of the existence of the contract.

The evidence shows that about the maturity of the note, viz: about June 21st, 1850, Swezy, one of the defendants, tendered to plaintiff a deed executed in compliance with the contract by all the parties contracting therefor, and demanded payment of the note, which was refused, which tender, demand, and refusal were repeated some four or six weeks later; that some time in the winter next ensuing, the plaintiff declared to Swezy that he was "broken" and would have to give up the contract; that on August 16th, 1853, the plaintiff tendered to Ramirez, one of the defendants, the amount of said note and interest, and demanded a deed for the land, and that Ramirez refused to receive the money or to give the deed; that on the same day the plaintiff made the same tender to the defendant Covillaud, who received the money and gave a receipt therefor, adding these words; "And said Pearis is therefore entitled to the deed of the above lots, and to a return of his note."

It was proved that Covillaud and the parties interested in the land in 1850, had executed the original contract as "Covillaud & Co.," a co-partnership then existing; but that said partnership had been dissolved in 1850 or early in 1851, and due notice given thereof, and that several of the defendants had never been members thereof. There being a dispute as to whether the note given by plaintiff was a four months' "sight" or "date," the original contract of defendants, which recites the giving of the note, was, by consent, submitted to this Court.

The Court below entered a decree in favor of the plaintiff against the

defendant Covillaud, and dismissing the bill as to the other defendants. Plaintiff appealed.

*C. H. Bryan and Clark & Gass* for Appellant.

There are two points in the defence which were relied on by the defendants in the Court below, and upon which the judgment of the Court was founded.

1. That the length of time which elapsed without the payment of the balance of the purchase money by the plaintiff, authorized the inference that the contract had been abandoned.

2. Want of notice of the plaintiff's prior equity at the time of the purchase by them.

The agreement, or receipt of the defendants, shows that the promissory note made by the plaintiff, and described therein, was drawn by the plaintiff payable at four months' sight.    This is alleged in the bill or complaint, and not denied by the defendants.    To fix a time for the payment of the note it was necessary that the defendants should have presented the note to the plaintiff, and in four months with grace, after the presentment of the note to the plaintiff, the same would became due.    Story on Promissory Notes, § 207.

The neglect of the plaintiff to pay his note at maturity, or even his insolvency, if insolvent, could not have materially prejudiced the defendants.    They had their lien upon the lots sold, for the unpaid purchase money, and it was within their power to have rendered the time as short as they chose, by a prompt enforcement of their lien.    Gouldin *v.* Buckelew, 4 Cal. R., 112.

But we contend further, that whatever laches the plaintiff may have been guilty of in this respect, was waived by the act of the defendants, in receiving payment of said note on the 16th day of August, 1853. It will, no doubt, be contended by the defendants that the act of Covillaud, in receiving the money, could only affect himself, and would not be binding on his co-defendants.    If the interest of the defendants in the lots, at the time of the payment was held by them in co-partnership, then we hold that the receipt of the money by one of the partners, was the receipt of it by all, and this is the effect of the rule laid down by Cowen, J., in a somewhat similar case, in 5 Hill, 107, (head notes); 17 Johnson, 58.

But admitting that they held the interest in said lots as joint-tenants or tenants in common, still, the rule as to them would be the same; for the receipt of the money by one joint-tenant would be the receipt of it by all, and all are concluded by it.    It was due upon the joint contract of all.    All the payees therein had a joint interest, so that no one of them could sue alone for his proportion, nor was the plaintiff required to apportion it among them.    Mr. Parsons, in his recent work on contracts, at page 22, says: "A release of a debt or a claim of damages by one of many who hold this debt or claim jointly, is a full discharge of it, and this whether they hold this debt or claim in their own right, or

as executors or administrators." See also Parsons on Contracts, pp. 13, 14, 21 and 22, 162; Story on Contracts, 211; Paige's Ch. R., 423.

But admitting that the plaintiff could have been affected by the dissolution of the alleged co-partnership, was it not necessary to prevent him from paying the money to Covillaud to have given him special notice of the dissolution, and to have named the person who was authorized to settle the outstanding business of the company? The plaintiff had had previous dealings with the co-partnership, knew that they had possession of his note, and knew not but that either of those who claimed the lots were entitled to receive the purchase money. Story on Partnership, §§ 161, 162.

Nor will a want of punctilious performance on the part of the plaintiff, in paying the money at the time the note fell due, be permitted to prevent a specific performance on the part of the defendants when they failed originally to make time of the essence of the contract. 11 Ill., 666; 4 McLean, 252; 5 Cond., 162; 2 Barbour, 37; 29 Me., 351; 6 Wheaton, 528; 1 Cal., 119.

*Goodwin and Wheeler* for Respondents.

The Court was correct in finding that the note was payable four months after date. · This is according to the evidence. As to whether the word is " sight" or " date," counsel disagree; we have, therefore, stipulated to make the original a part of the record, for an inspection of the same.

" That the demand for payment of the note and the tender of the deed, was made before the note was due; and the plaintiff was not bound, at that time, to receive the deed and pay his note."

This point rests, for its truth and importance, upon the one last above named. For, if the word " date" is in the original, instead of " sight," then this point is untrue, because it is proven that a demand was made on the plaintiff June 21, 1850. This was the last day of grace. The note was dated February 18, 1850, due four months after *date,* consequently June 21, 1850, was the proper day to make the demand; besides, it was demanded again some four or six weeks afterwards, and the deed tendered and payment again refused.

" That the argument that the length of time which elapsed without payment of the balance of the purchase money demands the inference that the contract has been abandoned, is of no force. It was within the power of the vendors, or their assigns to have rendered the time as short as they chose by a prompt enforcement of their lien for the purchase money."

The language above is taken from the opinion of this Court, rendered in 4 Cal., 112; and, did we depend upon " inferences," drawn from the appellant's non-performance of his part of the contract, we should fear that we had failed to show such an abandonment of the contract as this Court would recognize.

But we do not depend upon inference and vague conclusions; we de-

pend upon the absolute proof that appellant declared his own insolvency, and that " he would have to give up the contract."

" That the contract between the plaintiff and C. Covillaud & Co. was a joint contract, and the payment of the balance of the purchase money to C. Covillaud was binding on all the former co-partners or joint-tenants, and they were all concluded by it."

This may be perfectly good law, but the facts in this case render its application a legal impossibility.

Our points are the following :

This action is barred by the Statute of Limitations, more than four years having elapsed after the cause of action accrued and before the commencement of this suit; and, the same having been pleaded in the answer, must operate as a complete and final bar to this action.

The fact is undeniable, that more than four years elapsed after the cause of action matured, and before the commencement of this suit. How, then, can the defendants, Ramirez, Sampson and Sampson, be held liable in this action ?   The appellant answers, " by the act of C. Covillaud in receiving the money, August 16, 1853."   But we insist that the act of C. Covillaud, done in his own name, and without authority from the other defendants, and against their express wishes, cannot revive this contract as against them, so as to take the case out of the statute.   The 31st section of the Statute of Limitations settles the point. It is this : " No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing signed by the party to be charged thereby."

But considering this point independently of the statute, the authorities clearly establish this doctrine :   That one of several joint obligors cannot, without due authority, continue or revive a cause of action as against his co-obligors; no agency, in such cases, being presumed, as in the case of partnerships.   Dunham v. Dodge, 10 Barbour's Sup. Court Rep., 566 ; Lewis v. Woodworth, 2 Comstock, 512 ; Willis v. Green, 5 Hill, 232.

The defendants acted promptly, and up to the letter and spirit of the contract.   The plaintiff not only failed to pay the note at maturity and accept the deed, but he positively refused, not only once, but he refused a second time, and, subsequently, proclaimed his own insolvency and announced his abandonment of the contract.

The rule in equity is this:   Where either party has acted punctually and in good faith up to the letter and spirit of the contract, and the adverse party has refused to comply, the party thus complying is discharged from the contract as against the party in default.   Lloyd v. Collett, 4 Brown's Chancery Rep., 469 ; Drew v. Duncan, 11 Howard's Practice Rep., 279 ; Benedict v. Lynch, 1 Johnson Chan., 370.

The common error into which the bar have fallen, that time is not of the essence of the contract, grew, in a great measure, out of a misreported opinion of Lord Hardwicke.   And this error is detected and exposed, and a new rule laid down in the note to the above-cited case of

Lloyd v. Collett. See, also, Spurrier v. Hancock, 4 Ves., 667; Harrington v. Wheeler, 4 Ves., 686, and note; 2 Stor. Eq. Jur., § 776 and note.

It is well settled in equity, that "a party cannot be permitted to lie by and speculate on the rise of the estate." 1 John. Ch., 378; Alley v. Deschamps, 13 Ves., 228.

The opinion of the Court was delivered by Mr. Chief Justice MURRAY. Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

This was an action in the Court below, to enforce a specific performance of a contract for the sale of lands. The record contains some eight assignments of error, all of which will not require examination.

From a personal inspection of the original, we are satisfied that the note executed by defendants was payable four months after date, and not after sight. From this it would follow, that after the tender of the deed, and the demand and refusal of payment by the plaintiff, he had forfeited his right to insist on a performance of the contract.

From what appears in the record, the defendants were tenants in common, and not partners, and therefore not bound by the act of Covillaud in accepting the balance of the purchase money. See 10 Barbour S. C. Rep., 566; 2 Comstock, 512; 5 Hill, 232. So far as Covillaud was concerned, he might bind his own interest in the land, and if the defendants had been partners, they would have been equally bound by the rule that one partner is the agent for the whole firm, and may in such capacity bind them by his acts; but in the case of lands or a chattel held by several as co-tenants, the rule is different.

In addition to this, we think the cause of action is barred by the Statute of Limitations, and that the facts of the case go far to make out an abandonment of the purchase by the plaintiff.

This view of the case renders it unnecessary to consider the other points of the case.

Judgment affirmed.