JULIAN F. DE WITT v. CHAS. H. PRESCOTT AND GEO. H. BARNARD.

*Proof of documents—Notice to produce papers—Agency—Breach of warranty by judgment lien.*

Documents cannot be treated as proven by the testimony of a witness to their identity unless the adverse party has had an opportunity to inspect them and cross-examine the witness.

Notice to produce papers is insufficient if it barely allows time to procure them by telegraphic communication with clients, unless longer notice is impracticable.

Defendants to an action on a contract are entitled, without notice, to the production of all papers which formed any part of the contract.

In an action against joint defendants upon an implied warranty it is admissible to allow one of the defendants to testify as to his authority to bind the other, though he must state facts and not conclusions.

A judgment lien does not operate as a breach of warranty of title unless the judgment was had in a proceeding which the guarantors undertook to be concerned in or had proper notice to defend.

One who sells goods with warranty of title to a purchaser in another jurisdiction cannot claim that his liability thereon is released by any reasonable arrangements which the buyer finds himself compelled to make with the holder of an existing lien to enable him to remove the goods to his own domicil; and the fact that such a removal changes the venue of any consequent action does not necessarily support an inference of fraudulent combination by the buyer and the lien-holder against the seller.

Where replevin is brought against a purchaser, and the seller assumes the defence, the purchaser cannot be required to watch and defend the action without at least adequate notice and adequate reason.

Where one of several joint-vendors is manager of the business and makes all the bargains, he must be presumed to act for all where there is a joint interest and joint duty; and notice to him in proceedings arising out of a breach of warranty caused by the existence of a lien upon the property sold, is notice to the rest unless in cases where the original lien has been extinguished and the existing lien springs from a contract with the buyer.

Error to Bay.   (Green, J.)   June 13–14.—October 3.

ASSUMPSIT.   Plaintiff brings error.   Reversed.

*Holmes, Collins & Stoddard* for appellant. Copies are not admissible in evidence unless proper notice to produce the originals is seasonably given: 1 Green's Pr. 250; Graham's Pr. 528; *Furguson v. Hemingway* 38 Mich. 159; *Gorham v. Gale* 7 Cow. 739: 17 Am. Dec. 549; a notice cannot be said to be in writing unless properly signed: Wade on Notice § 1229; notice to produce must be served a reasonable time before the trial, unless the party giving the notice shows that the papers called for are in court: 1 Graham's Pr. 529; 1 Burrell's Pr. 449; 1 Greenl. on Ev. 562; *Story v. Patten* 3 Wend. 486; *Utica Ins. Co. v. Cadwell* id. 296; *McPherson v. Rathbone* 7 Wend. 216; *Hammond v. Hopping* 13 Wend. 505; *Barton v. Kane* 17 Wis. 37; *Moulton v. Mason* 21 Mich. 364; whether a joint party had authority to undertake the defense of a suit is for the jury to decide: *Amer. Trans. Co. v. Moore* 5 Mich. 368; he cannot testify to the fact: *Ward's Central Pacific Lake Co. v. Elkins* 34 Mich. 439; *First National Bank of Sturgis v. Reed* 36 Mich. 263; *Lake Superior Iron Co. v. Erickson* 39 Mich. 492; express notice to defend is not necessary to render a party liable over for the amount of a judgment: *Chicago v. Robbins* 2 Black 418: 4 Wall. 657; *Brewster v. Countryman* 12 Wend. 446; but persons who are given an opportunity to defend are bound to protect their rights: *Hazen v. Reed* 30 Mich. 331; *Adams v. Cameron* 40 Mich. 506; *Ryerson v. Eldred* 23 Mich. 537; *Taylor v. Boardman* 25 Mich. 527; *Stilwell v. Carpenter* 59 N. Y. 415; and are, in effect, parties: *Mason v. Kellogg* 38 Mich. 139; *Bachelder v. Brown* 47 Mich. 370; *Barney v. Dewey* 13 Johns. 224: 7 Am. Dec. 372; *Mayor v. Troy & Lansingburgh R. R.* 49 N. Y. 657; *Lovejoy v. Murray* 3 Wall. 1; *Green v. Van Buskirk* 7 Wall. 139; *Craig v. Ward* 36 Barb. 377 and 383; *Thurston v. Spratt* 52 Me. 202.

*Shepard, Lyon & Clark* and *H. H. Hatch* for appellees. Voluntary relinquishment of possession destroys a lien: *McMaster v. Merrick* 41 Mich. 505.

CAMPBELL, J.   De Witt sued defendants on a claim aris-
ing out of a breach of implied warranty of title to certain
lumber sold by defendants to D. C. Welch & Co., his as-
signors.   Welch & Co. were lumber dealers, living in Buffalo,
New York, and the firm was made up of D. C. Welch and
J. H. Behn.   The sale was made in July, 1879, at Bay
City, and the lumber was then lying at 'Hale's dock, in
Tawas, Iosco county, having been sawed by S. & C. D. Hale
and their assignee, Edward W. Eames, who then held it in
possession, and out of whose claim for a lien for sawing the
present controversy arose.

Welch & Co. sent up a barge, named the Orontes, to
bring the lumber down to Buffalo, and a load of about
537,000 feet was accordingly taken down, and after its arrival
at Buffalo was replevied by Eames, who established a claim,
for which judgment was given to the amount of $3477.89,
and paid by De Witt. · This is the basis of the present action,
in which the defendants prevailed.   De Witt brings error.

The defense on the facts was made to rest on a denial of
the existence of the lien, and a claim that if it existed it was
lost by the action of Welch & Co.   There was also a claim
by the defense that Barnard was not bound, whether Pres-
cott was or not.   Plaintiff claimed that the lien was estab-
lished by the judgment, and that defendants were in such a
position as to be bound by it.   There were some interlocu-
tory questions of evidence, and some rulings on the law,
assigned as error.   As there is not much probability that
most of the questions about evidence will arise in similar
shape on a new trial, no further time will be given to them
than is necessary to avoid mistake.

While one of plaintiff's witnesses was on the stand, defend-
ants, during cross-examination, undertook to prove by him
the identity of certain documents, which counsel for plaint-
iff was not allowed to see, but which were afterwards read
as having been proved.   This was, we think, erroneous.
There may be no objection to proving documents at one
time rather than another, if the opposite party consents.
But there is no case where a witness proving an instrument

should not be subject to immediate cross-examination, which could never be effective without the view of the document itself,—not only to guard against forgery or substitution, but also to inform parties what issues were likely to arise concerning genuineness or any other fact which is material. Our rules in equity cases have done away with proof of instruments at the hearing, for the reason that there was always danger of surprise and imposition. But there was never any practice which deprived parties of the right to inspect and cross-examine in season.

Upon the questions of secondary evidence, we think that where parties reside at a distance from the place of trial, a notice to counsel to produce papers which will only allow time to communicate with clients by telegraph is insufficient. We need not pass upon exceptional cases where the necessity is not discovered early, and where an offer is made to bear such expenses and furnish such facilities as the exigency suggests. But, in the absence of peculiar exigencies, we think that there is no propriety in putting parties to the necessity of trusting their business to an agency which is not only uncertain, but open to difficulties of proof as well as extra expense for such full notices as are necessary for safety.

But it must also be remarked that the defendants in this case were entitled, without notice, to the production of all papers which formed any part of the contract under which the cause of action arose, and, as far as we can judge from the record, a considerable portion of the papers called for were of this character.

It does not appear to us that there was error in allowing Prescott to be asked concerning his authority to bind Barnard. That his opinion concerning his authority would not prevail over facts is no doubt true, and it may be that the questions put were not sufficiently confined to facts rather than conclusions. But the entire facts were open to inquiry, and the legal consequences should then have been made the subject of proper requests to charge.

A similar remark will apply to the questions touching his

employment of counsel and assumption of the defense in Buffalo. There was one aspect of the case in which this fact might be material. His answers should be strictly confined to facts, and not conclusions; but the facts themselves were pertinent. But upon this, as well as upon some other questions, there seems to have been some testimony given by persons who must have acted on hearsay. This, of course, is not admissible.

The chief questions of importance relate to the various rulings upon the merits, or bearing on them.

It therefore becomes important to know what the issue really was. The declaration rests practically upon a breach of warranty of title, and on the existence of an incumbrance in the shape of a possessory lien, which plaintiff had to pay. But the averments in the special count did not rest the cause of action on an original payment of this lien as one to be made out by ordinary testimony, but on the obligation arising out of an adjudication upon it, which precluded the necessity of any further investigation, and bound the parties. In order, therefore, to make out such an effect, it was necessary to show that the judgment was had in a proceeding which defendants either undertook to be concerned in, or, being otherwise concerned, had proper notice to defend. There was evidence before the jury which would bear upon both of these conditions, and there was also on the other side a claim that the testimony exonerated defendants from any duty or liability. Some facts are disputed, and some are not.

It is not disputed that defendants (or Prescott, in their name) sold the lumber in question as their own lumber, and unconditionally, in the first week of July, 1879, and that Welch & Co. were expected to send up a vessel to be loaded, and that on or before July 7, 1879, they sent up the Orontes, and gave notice to Prescott, by letter, which he received, stating how she was to be loaded, and that she was loaded accordingly. It also appears that Eames set up his claim to a lien on the lumber, but under what circumstances there seems to be some disagreement. It appears by Pres-

cott's testimony that subsequent shipments were made by him without Eames' consent and against his protest. It appears by the same witness that after the cargo in question was shipped, he agreed that the purchasers might withhold a portion of the price of this and of another cargo until he had settled with Eames; and that a few days subsequently, when the lumber had arrived in Buffalo, and Eames was about replevying, Prescott obtained paper for the full balance. All of these transactions involve some disputed circumstances.

When Eames replevied the lumber in Buffalo, he did so on the averment that his lien had been kept alive by the shipping agreement with Welch & Co. Immediately thereupon the testimony tends to show that counsel from Buffalo applied to Prescott, in Bay City, for indemnity, and he directed the witness to proceed and defend, and that he would indemnify and protect Welch & Co., who then went on and bonded the lumber. There was further testimony concerning the conduct of the various parties pending the replevin suit.

The more important allegations of error relate to the rulings of the court as to what circumstances would relieve defendants from responsibility for the result of the replevin suit, and discharge them from any lien which may have existed. And several of the charges and refusals complained of are connected with the alleged waiver of the lien, by allowing the lumber to be shipped to Welch & Co.

The court below held that any delivery of the lumber by Eames to Welch & Co. would discharge the lien, unless preserved by agreement, and that no such agreement would bind defendants or sustain the lien, so far as their responsibility to discharge or defend against it was concerned, unless made with their consent or ratification. This doctrine was laid down very broadly, and it was also intimated that an agreement to remove the lumber from this into another jurisdiction might be treated as fraudulent and injurious to defendants. And the court refused to charge that such an agreement, made without fraudulent intent and with no

design to injure defendants, would not be of itself a fraud on them.

We have not found authority for any such unqualified doctrine, and no cases were cited on the argument sustaining it. It is quite uniformly held that an unconditional surrender of possession, or conduct showing a design to discharge the lien, or plainly inconsistent with it, will usually put an end to it. But it seems equally clear that the holder of the lien may allow the owner of the property to take it into his possession and remove it without prejudice to the lien, if so agreed. *Wheeler v. M'Farland* 10 Wend. 318. And it is also undisputed that such a lien cannot be destroyed by a removal, without the consent of the lien-holder, from his possession. And in *Nash v. Mosher* 19 Wend. 431, Cowan, J., in reviewing the authorities, comes to the conclusion that the holder of a possessory lien can transfer the lien with the possession, as other valuable rights may be assigned.

There was testimony in this case on which the jury might lawfully have found that Welch & Co., as actual and complete purchasers of the lumber in question, and in direct accordance with the terms of their agreement of purchase, sent a vessel up from Buffalo to Tawas for the express and only purpose of getting this lumber, and that the defendants had bound themselves by that agreement that they might lawfully take it. There was, also, testimony indicating that it was understood the vessel should not be delayed in loading and departure. It is plain that Welch & Co. could not get the lumber from the hands of Eames, (whose original possession was unquestionably lawful, and whose continued possession would be lawful if any lien existed,) without either seizing it by replevin, and thereby incurring the risks of litigation, or paying the sum demanded, and running the risk of recovering it back as a lawful claim against defendants, or by taking it by permission, without prejudice to such lien as actually existed. They had already incurred the expense of employing the vessel, and the dilemma was not by their fault. We can see no reason why,

having already been put into a position where any other course would in all probability subject them to difficulty, they were not fully justified, if they acted in good faith, in adopting the course complained of. And we can see no reason why, under such circumstances, any inference of fraud or unfairness should arise because the controversy would be removed to Buffalo. If Welch & Co. had, as their purchase fully authorized them to do, so far as defendants are concerned, taken the lumber and removed it without the consent of Eames, he could certainly have sued them in Buffalo, and defendants would have been responsible for any lien he established. And in like manner, if Welch & Co. chose to set up in abatement or defense of payment their damages by reason of paying the claim, or other damages arising out of the facts, the litigation would be likely to arise in their domicile, and they had as good a right as defendants to prefer their own domicile, if attainable. If any lien actually existed, all the complications were primarily due to the default of defendants, who cannot complain of anything which Welch & Co. were reasonably compelled to for their own protection.

It also appears evident that if defendants assumed the defense, and had practical control of its management, Welch & Co. could not thereafter be required to watch it or to defend it without at least adequate notice and adequate reason for so doing. Whatever may be the abstract correctness of the doctrine claimed to apply in case of a fraudulent combination of Welch & Co. with Eames, it could have no force unless fraud should be proven, and it is not clear from the record that testimony of such fraud was put in.

So far as defendant Barnard is concerned, his responsibility depends chiefly on whether he was one of the vendors of the lumber, as the record seems to indicate that he was. If he was bound by the warranty as Prescott's associate in the sale, and if, as seems to be shown, Prescott was manager of the business and the party through whom all the bargains were made, notice to Prescott was notice to him, and the latter must be presumed to be acting for both when

there was a joint interest and joint duty. The only case in which the question of authority could apparently arise would be where the original lien was entirely extinguished, and· the lien thereafter was one by contract with Welch & Co. The record does not indicate such a contingency, so far as the testimony is set out.

In the absence of other statements, we think that what we have said meets such questions as are likely to arise on a new trial, and it is not worth while to take up the charges and requests one by one, as they involve repetitions and unimportant shades of difference.

The judgment must be reversed with costs, and a new trial granted.

GRAVES, C. J. and SHERWOOD, J. concurred. COOLEY, J. did not sit in this case.