TIPPING and others, Appellants, vs. ROBBINS, Respondent.

*November 6 — December 1, 1885.*

MINES AND MINING. *(1) Lease to voluntary association: Rights of successor. (2) Revocation of license: Notice. (3) License by one tenant in common. (4) When license irrevocable although licensee has not entered. (5) Res adjudicata: Nonsuit.*

1. A voluntary association, of which the defendant was a member, having a mining lease of a certain tract of land, obtained a similar lease of the adjoining lot (now owned by the plaintiffs) in order to

Tipping and others vs. Robbins.

extend into the same a level which they were running upon the former tract. The defendant subsequently became the owner of the former tract and the association surrendered to him its rights therein, but the lease of the plaintiffs' lot was not assigned to him. *Held*, that the defendant acquired no right under said lease to extend the level upon the plaintiffs' lot and to dig and remove ore therefrom.

2. After the defendant became the owner of the first-mentioned tract one of the plaintiffs gave him an oral license to mine upon their lot. Afterwards a notice was posted upon said lot, notifying the association above mentioned, and all persons claiming under it, not to mine upon said lot under the lease to the association, because the same had been forfeited. After the posting of such notice the defendant continued for a long time, with the knowledge of the plaintiff who gave him the license, to run the level on his own lands towards the plaintiffs' lot, until finally he struck on the latter a valuable discovery. *Held*, that the notice posted was not a revocation of the license given to the defendant.

3. A license to mine upon lands given by one tenant in common will not bind the other tenants. [Whether such license is of any value without a further license from the other tenants in common, not considered.]

4. A license to mine upon lands is irrevocable under sec. 1647, R. S., after a valuable discovery or prospect has been struck by the licensee, even though he has not made an actual entry under the license.

5. After the commencement of an action to recover damages for the breaking and entering upon plaintiffs' land and the removal of lead ore therefrom by defendant who claimed to have acted under a license, the latter commenced an action against two of the plaintiffs and two other parties, in the nature of an action *quare clausum*, to determine the rights of the defendants therein to sink a shaft from the surface of said land to the opening below whence he was removing the ore through a drift on his own adjoining lands. The trial of the latter action was first had, and resulted in a nonsuit. *Held*, that the judgment in that action did not conclude either party as to the issues in the action first mentioned.

APPEAL from the Circuit Court for *Green* County.

The plaintiffs are *Irene Tipping* and *William Tipping*, minors, by William T. Fox their guardian *ad litem, Mary Jane Tipping*, and *William T. Fox*. The complaint alleges

that they are the owners of a certain described tract of land; that in June, 1882, the defendant unlawfully and forcibly broke into and entered upon said land through a drift below the surface of the ground, and dug and removed therefrom large quantities of lead ore, to the damage of the plaintiffs in the sum of $4,000; that there was no communication with said drift from the plaintiffs' land and that the defendant refused to permit the plaintiffs to enter said diggings for any purpose; that the defendant has continued, and threatens to continue, to dig and carry away the ore from plaintiffs' land, and irreparable injury will result from his so doing. Judgment was asked for the damages aforesaid, and for an injunction, etc.

The answer set up a right in the defendant to mine upon the plaintiffs' land, both under a lease given to the Coon Branch Mining Level Company by the owners of said land, to the rights of which company the defendant claimed to have succeeded, and also under an oral license to the defendant from the plaintiff *William T. Fox.* The facts as found by the circuit court are as follows:

" 1. That in the year 1882 the defendant, *James M. Robbins,* discovered on and in the lands of the plaintiffs the lead ore in controversy in this action and described in the pleadings herein; that the same was discovered in a crevice or range of lead ore, which was a valuable discovery as made by said defendant, *James M. Robbins,* on plaintiffs' land.

" 2. From the evidence, as judged and construed by me, I find that the plaintiff *William T. Fox* verbally authorized the defendant to engage in and prosecute work for the purpose of trying to find mineral lead ore on plaintiffs' land, and did not revoke said authority or license until after the defendant had made a valuable discovery of lead ore on plaintiffs' said land, being the same land of plaintiffs' described in the complaint herein, which valuable discovery is

the one from which the defendant took out the lead ore in controversy.

"3. I find that Lawrence Tipping, Jarman Tipping, and Mary Eliza Tipping, on the 7th day of September, 1874, were the owners of the tract of land upon which the defendant mined the lead ore in controversy herein, and on that day, together with one Thomas G. Stephens and one William Richards, who claimed some mining interest in said Tipping tract of land, executed a mining lease of said tract of land to an association of persons called the Coon Branch Mining Level Company, of which association the defendant was a member and contributor. That the consideration for executing said lease was that the lessees or their assigns should pay to the Tippings one eighth part of all the minerals and ores raised from the ground, and also, that the Coon Branch Mining Level Company should and did sell and assign to Lawrence Tipping, William Richards, and Thomas G. Stephens, the right in full, which the said Coon Branch Mining Level Company had acquired from one Emily Shaw by lease, to work a certain range of mineral, known as the Clymo range, situate on her land so leased. That the object of the association called the Coon Branch Mining Level Company, in procuring said lease from Tippings, Richards, and Stephens, was to prospect the land so leased by extending a level or adit that they were running towards and on the Tippings land; which adit or level was situated on the tract of land adjoining the Tipping tract, which the said association had leased from Emily Shaw; that subsequently, the defendant, *James M. Robbins*, became the owner in fee of the Emily Shaw tract of land, and all of the members of the association called the Coon Branch Mining Level Company, except the defendant, yielded up to the defendant the right to prosecute the level on the Emily Shaw tract, in the direction of the Tipping land, without making any formal assignment of the lease from the Tip-

pings and Richards and Stephens. But I find that the defendant, as a member of the association, and as the successor of the association to the right to run the level on the Shaw tract towards the Tipping tract and on to the Tipping tract, prosecuted his level at great expense on the Shaw tract towards the Tipping tract until he got on to the tract leased by the Tippings and Richards and Stephens to the Coon Branch Mining Level Company, and made the discovery of minerals thereon, from which he took the ores in controversy. I find that the defendant, in prosecuting his levels, always claimed, under the Tippings, Richards, and Stephens lease, the right to mine the land covered by it according to its terms. I find that the lease executed by Lawrence Tipping, Jarman Tipping, Mary. Eliza Tipping, T: G. Stephens, and William Richards was never canceled nor revoked. The amount of lead ore raised by defendant from plaintiffs' land is estimated at 100,000 pounds, but I find that it is all in the level, and the exact amount can be ascertained by weight.

"4. I find that the plaintiff *Wm. T. Fox* had notice of defendant's claim under the aforesaid lease, before and at the time he acquired an interest in the land.

"5. I do not find that the question of the right to mine upon plaintiffs' land by defendant as lessee, or as the discoverer of a valuable range, was ever necessarily involved in any previous litigation between the parties."

As conclusions of law the court found that the defendant had and has a legal right to dig and mine upon plaintiffs' lands the mineral in the crevice, opening or range by him discovered in running a level from his own land on to that of the plaintiffs; that he is entitled to the mineral taken by him from the plaintiffs' land, after paying to plaintiffs the one-eighth part thereof as rent; and that he is entitled to all the lead ore mineral found in said range, subject to the said rent.

The court also found that the plaintiffs are not entitled to recover in this action, and that the defendant is entitled to his costs and disbursements and to such damages as he may prove to have sustained by reason of the injunction herein.

From the judgment entered accordingly the plaintiffs appealed.

For the appellants there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton*.

For the respondent there was a brief by *Cothren & Simpson*, and oral argument by *Mr. Cothren*.

COLE, C. J. The learned circuit court decided that the defendant made a valuable discovery of a crevice or range of lead ore upon the plaintiffs' land before his authority or license to mine upon the land was revoked. It is not entirely clear from the findings upon what ground the learned circuit judge based this authority or license. It is attempted, as we understand the argument of the learned counsel for the defendant, to sustain his right or license upon two distinct and independent grounds: (1) Through the Tipping lease given in September, 1874, to the Coon Branch Mining Level Company; and (2) by parol license given the defendant by the plaintiff *Fox*.

We do not see how the defendant acquired any rights from the first source; for, while the evidence shows that there was some talk between the defendant and different members of the Coon Branch association about assigning to him that lease, yet it was never in fact assigned. On the contrary, when the defendant prepared a written assignment of the lease and handed it to the president of the association to be executed, the president and other members refused to sign it. The assignment, as drawn, included both the Shaw lease and the Tipping lease, but the evidence is entirely clear and conclusive that no assignment was ever

made. It is true, the defendant, after he purchased the Shaw tract in February, 1876, prosecuted mining quite extensively upon that land, but this he did as owner. Nor can we see the least reason for claiming that the defendant acquired some rights in the Tipping lease because he was one of the original members of the Coon Branch association; for, so far as the Shaw tract was concerned, the association surrendered its mining rights in that land. The proof is very explicit and satisfactory that when the defendant purchased this land he insisted that the association should either work it according to the terms of the Shaw lease, which they had not done, or surrender the land to him. A majority of the members of the association deemed it advisable to surrender it, and this was in effect done; so that whatever mining was done upon the land by the defendant after he purchased it was in his own right as owner, and not under any lease which had been theretofore given by his grantor. As he was the owner, all rights and title, legal and equitable, became absolutely vested in him. So upon this branch of the case we hold that the defendant can claim nothing under the Tipping lease.

The court below found that *Fox* verbally authorized the defendant to engage in and prosecute work for the purpose of trying to find lead ore on the plaintiffs' land, and that this authority or license was not revoked until after the defendant had made a valuable discovery on the land. We think whatever rights the defendant has to mine on the land must be derived from the parol license, supported by the statute. The evidence in regard to such parol license is quite contradictory. We shall go into no discussion of the testimony which makes for or against the fact. I will, however, say that the evidence to establish such license is not as clear and satisfactory to my mind as it seems to be to my brethren. Incontestably there is considerable tes-

timony in the case which tends to show that *Fox*, as far as he had power so to do, gave the defendant verbal license to mine upon this land. Even in May, 1882, when the survey was made, he did not seriously object to the defendant's mining upon it if the latter would pay one sixth rent for all mineral taken out above the white bed-rock. It appears that *Fox* purchased an undivided one-third of the land of Mary E. Tipping in April, 1879, and another third of Lawrence Tipping in January, 1881. The other third belongs to the minors, *Irene* and *William Tipping*, subject to the dower interest of their mother. After a careful examination of all of the evidence our conclusion is that we cannot reverse the finding of the trial court on the ground that no parol license is established. There is no satisfactory preponderance of evidence against the finding on this point, except as to the infant plaintiffs; consequently, under our rule, we cannot set it aside.

As to the other undivided third owned by the infant plaintiffs there is no proof whatever that any license was ever given by any one which can affect them. Whether a general guardian could give a parol license in their behalf without an order of the county court, is a question not presented. But certainly a license by one tenant in common to prosecute mining on land would not bind a dissenting tenant. It is certainly a proper matter for the county court to determine whether the interests of the minors will be promoted by having mining done upon their land. The judgment, so far as it relates to the interests of the minors in the land, we deem erroneous. No parol license has been shown which can bind them. *Mr. Fox* might give a legal right to dig and mine upon the land so far as his interest was concerned. But this would not bind the infants. Whether the parol license given by *Fox* is of any value without the further license lawfully obtained of a guardian representing the infants, is a point we need not consider now.

The able and ingenious counsel for the plaintiffs insists that there is no evidence whatever which justifies the conclusion that the defendant had a parol license from *Fox* to mine upon the land which, even as to him, was irrevocable under sec. 1647, R. S. That section, among other things, provides "that no license or lease, verbal or written, made to a miner, shall be revocable by the maker thereof, after a valuable discovery or prospect has been struck, unless the miner shall forfeit his right by negligence such as establishes a forfeiture according to mining usages." Counsel says that this provision does not mean that a mere license to enter upon land, and dig and remove mineral therefrom, while executory, and before an actual entry is made under it, is not revocable. The language, he claims, is not susceptible of such a construction; that the words used imply or presuppose the existence of a license to mine, an entry of the land under it, and the striking of a valuable discovery or prospect upon the very premises covered by the license. We do not think the statute should receive this strict construction, because, if so construed, it would certainly, in some cases, defeat the very object of its enactment. Counsel well says that at the time of the passage of this law an oral license to mine for lead ore was revocable by the maker even when executed, and where the miner had entered under it and made large outlays of labor and money, and had discovered mineral. In order, therefore, to remedy this state of things, and protect the miner, this statute was enacted. Now, if it should receive the construction for which counsel contends, the purpose of its enactment would in a measure be defeated. Take, for illustration, a case nearly like the one at bar in all essential points. A miner goes to A. and B., who own adjoining lots, and obtains a license from each to mine upon his land on payment of the usual rent. He goes to work on the land of A., expends much labor and money in sinking shafts and running levels, and finally strikes a

mineral-bearing crevice near the line, which is absolutely certain to run into the land of B. Now, can the latter, in view of this statute, say to the miner just before this crevice is traced into his land: "I revoke the license which I gave you to mine upon my land. You have made no actual entry upon it thus far — have really done no mining upon it. You cannot have the benefit of any discovery you have made, nor remove any mineral which, by prosecuting your work, you would obtain from the range if you followed it upon my lot"? No one can fail to see the wrong and injustice which the land-owner would perpetrate if allowed to revoke his license under such circumstances. Yet this would be the result if, as counsel contends, the license is revocable until an actual entry is made upon the land to which it relates and a valuable discovery is made upon it. In this case the defendant had run his drift nearly to the line of the Tipping land. The crevice was an open one, bearing mineral, and persons crawled into the opening and actually found mineral in it on that lot. We have no doubt, under the circumstances, that the license came fully within the statute, and was irrevocable at this time, so far as *Fox's* interests are concerned.

But it is claimed that the license was revoked in August, 1880, if any had ever been given. There was a written notice put upon the Tipping lot, near the line, at that time, notifying the Coon Branch association, and all persons claiming under it, not to mine on that lot under the lease given in 1874, because that lease had been forfeited. The defendant undoubtedly saw this notice, but continued, for more than twenty months thereafter, drifting and running his level towards the Tipping land. It is not supposable that *Fox* was ignorant of these mining operations. If he intended to revoke any license which he had given the defendant to mine on the Tipping land, he should have notified the defendant personally of such revocation. The rules

of frank, manly dealing required him to do this, in order that the defendant might be aware of his intention not to let him follow his level on the Tipping lot. So we are not inclined to treat the notice given as a revocation of any license which had been made to the defendant.

The only remaining question arises on the fifth finding. The circuit court found that the question of the right to mine upon the plaintiffs' land by the defendant, as lessee or as the discover of a valuable range, was not necessarily involved in any previous litigation between the parties. It appears that on the trial the plaintiffs offered in evidence the record in an action commenced, subsequent to this, by the defendant in this case against two of the present plaintiffs and two other parties. That suit seems to have been treated, both by counsel and court, as a legal action triable by a jury. On the trial of that action the court nonsuited the plaintiff. Now, it is said that that judgment, though in form a nonsuit, really involved the merits of the action so as to operate as an estoppel upon all issues in this. But we do not think this effect should be given to that adjudication. That action was between different parties, and the questions there litigated did not necessarily cover the grounds or issues embraced in this suit. That suit was in the nature of an action *quare clausum* to determine the right of the defendants there to sink a shaft from the surface of the ground to an opening below. The plaintiff was nonsuited, and the judgment therein given ought not to conclude the parties in this action from litigating the issues which are involved in the pleadings.

It follows from these views that the judgment of the circuit court must be reversed, for the reasons given, as to the rights of the infant plaintiffs, and the cause remanded for further proceedings according to law.

*By the Court.*— It is so ordered.