WRIGHT *v.* KAYNOR.

1. HUSBAND AND WIFE—TENANCY BY ENTIRETIES—HOW CREATED —TENANCY IN COMMON.

> Where a conveyance to a man and woman does not describe them as husband and wife, and they are not in fact husband and wife, though they have gone through a ceremony of marriage and live together in that relation, there being an impediment to the marriage, the estate created by the conveyance is not a tenancy in entireties but a tenancy in common, the woman's share of which, on her death, descends to her heirs.

2. CONTRACTS — OPTIONS — VALIDITY — UNILATERAL CONTRACTS — CONSIDERATION—LEASE.

> A stipulation in a lease giving the lessee the option to renew the lease and to purchase the land forms a part of the inducement for the execution of the lease, is founded on a sufficient consideration, and is valid, though it is unilateral in the sense that the lessee is under no obligation to renew or purchase.

3. TENANCY IN COMMON—CONTRACTS OF CO-TENANTS—NOTICE TO CO-TENANT—SUFFICIENCY.

> Where a man and woman, believing themselves to be tenants in entirety of certain lands, but in fact tenants in common, executed a lease thereof containing options for renewal and purchase, and the woman died before the time to exercise the option arrived, notice to the man of election to renew the lease is sufficient, and binds the heirs of the woman, though the notice was given upon the assumption that the entire estate was in the man and his grantees. GRANT, J., dissenting.

4. LEASES — OPTION FOR RENEWAL — NOTICE OF ELECTION — PRESUMPTIONS.

> Where an option to renew a lease expired on April 9, and the renewal lease, bearing date April 1, acknowledged May 25, contains recitals indicating that the lessee had done what was necessary to entitle him to such renewal, it will be presumed that notice of election to renew was given prior to April 9, irrespective of the presumption as to the date of the execution of the renewal. GRANT, J., dissenting.

5. TENANCY IN COMMON—CONTRACTS OF CO-TENANTS—EXECUTION
BY CO-TENANT—SUFFICIENCY—EQUITY—MAXIMS.

    Where a lessee had done all that was required of him to enti-
tle him to a renewal of his lease, the circumstance that the
renewal was not formally executed by the heirs of a deceased
co-tenant is unimportant, since equity regards that as done
which ought to have been done.

6. CONTRACTS—VALIDITY—UNCERTAINTY—LAND CONTRACT—PUR-
CHASE PRICE.

    An option to purchase land at a price to be agreed upon by the
parties, "not to exceed $75 per acre," is not void for uncer-
tainty as to the purchase price, since the purchaser may pur-
chase for $75 if the vendor will not take less.

7. SAME — CONSTRUCTION — INDEPENDENT PROVISIONS — LEASE —
OPTION TO PURCHASE—PROVISION FOR RIGHT OF WAY—EFFECT.

    Where a lease contains a provision that the lessor shall have
a right of way across the premises, and in a subsequent clause
in which the right of way is not mentioned gives the lessee
the right to purchase the land, the provision for right of way
will not be construed to apply to the clause giving the right
to purchase.

Appeal from Kalamazoo; Adams, J. Submitted Jan-
uary 18, 1907. (Docket No. 53.) Reargued October 8,
1907. Decided November 5, 1907.

Bill by Ammi W. Wright against Ansel Kaynor,
Levina Kaynor, William H. Bennett, and others, to de-
termine the ownership of certain land, and for the specific
performance of a land contract. From a decree dismiss-
ing the bill, complainant appeals. Reversed, and decree
entered for complainant.

*George W. Mechem* and *Bernard J. Onen*, for com-
plainant.

*Osborn & Mills*, for defendants Kaynor.

*O. Scott Clark*, for defendants Bennett, et al.

Defendant Ansel and Augusta Kaynor were owners as
tenants in common of certain land of which that in con-

troversy is a part. On May 2, 1896, said Ansel and Augusta executed a lease to one Dee Allen for the term of five years upon an annual rental of $50. That part material to this controversy reads as follows:

"Together with the privilege and right to said second party to a renewal of this lease at his option upon the same terms as herein stated, for an additional term of ten (10) years, after the expiration of the within granted term of five years. This lease becomes null and void upon the failure of the second party to make payment of rent within thirty (30) days after the time stated in this lease. Said second party agrees to give said first party right of way to Gull Lake same width as first party agrees to give second party right of way into said leased land from highway.

"And in consideration of the leasing as aforesaid, said first parties agree with said second party, for themselves, their heirs and assigns, and the said second party, his heirs and assigns, that at any time during the rental or renewal term thereof, they will sell and quitclaim to said second party the within described premises on payment of the consideration of such a price as may be agreed upon by said first and second parties, price not to exceed seventy-five dollars ($75) per acre.

"Said second party hereby accepts within rental, renewal term, and option to buy, and agrees to make payments as herein stated."

Augusta died November 23, 1899, leaving one child. He died in August, 1902, being a minor without wife or issue. Ansel married the defendant Levina prior to April 17, 1901, at which date he caused the land to be conveyed to a third party, and by this third party to be reconveyed to him and Levina as tenants in entirety. April 21, 1902, Ansel and Levina mortgaged the premises to the defendant Minnie Wing. Defendants Brauer, Van Luster, and Haak are the brothers and sisters of Augusta and her heirs at law. Defendant Chris Brauer is the administrator of Augusta Kaynor's estate, and defendant Bennett the administrator of her son's estate. After Augusta's death Chris Brauer was duly appointed guardian of her son. The quantity of land in dispute is

15⅔ acres. By an agreement between Ansel and Levina Kaynor of the first part, and Dee Allen of the second part, dated April 1, 1901, and acknowledged May 25, 1901, it was agreed that:

"*Whereas*, by virtue of agreement made on the second day of May, 1896, between Ansel Kaynor and Augusta Kaynor, first parties, and Dee Allen, second party, the privilege and right is given to the second party to a renewal of the said lease at his option upon the same terms as therein stated, for an additional term of ten (10) years, after the expiration of the term of five (5) years therein stated, which said lease and option is hereto attached and made a part hereof, now, therefore, in consideration of a yearly rental of fifty dollars ($50), payable on December first in each and every year, the said agreement, lease and option to buy, together with each and every paragraph, condition, or option therein contained, is hereby renewed and extended according to provisions of the aforesaid lease and option so as to include the full end and term of ten (10) years from and after the ninth (9) day of April, 1901. Said second party hereby accepts within renewal and option to buy, and agrees to make payments as herein stated."

During Augusta's lifetime the rents were paid to Ansel and Augusta, the receipts sometimes being signed by both, and sometimes by Ansel only. Since her death they have been paid to Ansel and Levina. The heirs of Augusta refused to recognize the lease as binding upon them. So also did defendants Kaynor. Thereupon complainant, who succeeded to all the rights of Dee Allen by proper assignment, brought this suit in equity, praying for the determination of the several rights of the defendants in the premises and for a specific performance of the contract. All the defendants answered. Issue was duly joined, proofs taken and a decree entered dismissing complainant's bill.

Grant, J. (*after stating the facts*). Ansel Kaynor evidently acted upon the belief that he and Augusta owned this land as tenants in entirety. The deed to them did

not describe them as husband and wife. The conveyance was to Ansel Kaynor and Augusta Kaynor as grantees, and to their heirs and assigns. The habendum clause was the same. While they went through a ceremony of marriage and lived together as husband and wife, they were not so in fact, as Ansel had been previously married and by a decree of divorce or separation by the proper court in the State of New York, where he resided, he was prohibited from marrying again.

The conveyance by Ansel and Levina to a third party and by that third party to them as tenants by the entirety, conveyed only one-half interest in the land, which Ansel held as tenant in common with the heirs of Augusta, the defendants so named above. The questions therefore raised must be determined upon the basis of a tenancy in common.

1. The option for renewal of the lease and for the purchase of the land is valid. It formed a part of the inducement for the execution of the lease, and constituted a sufficient consideration, although it is unilateral in the sense that the lessee was under no obligation to renew the lease or purchase the land. *Waters* v. *Bew*, 52 N. J. Eq. 787; *Hawralty* v. *Warren*, 18 N. J. Eq. 126; 18 Am. & Eng. Enc. Law (2d Ed.), p. 631.

2. Did the possession or occupancy of Mr. Allen amount to an election to renew the lease for the additional term of ten years, under the case of *Delashman* v. *Berry*, 20 Mich. 292? This necessarily involves the examination of the testimony of the complainant as to the character of the occupancy of the premises. The testimony upon which he relies is as follows: One Griswold testified that he had charge of the Allendale property in 1899, and also of the Kaynor property in connection with it. There was a hotel on the Allendale property, but nothing on the Kaynor. He testified:

"From the time Allen purchased it the first year my father ran it; the next year I think Mr. Ford had it, that is he ran the hotel; the next year it was closed. The re-

sort was not open at all, a barbed wire fence around it everywhere. I think it was in 1900 that it was closed.

"During the year I was there Mr. Allen had access to this Kaynor ground. The year the resort was closed there was a sign up on the property, 'No Trespassing.' We kept the property cleaned up and the brush and dead trees taken out, and some land leased for tents I believe.

"I don't know of anybody who did not have access to the property during the year I was there. There were two young men in one tent on the Kaynor property. They did not occupy all of the property.  *  *  *

"I knew just about the location. I did not have possession of the whole Kaynor farm. There was a strip of ground the year I was there that was not cultivated. The land I had possession of practically ran to that where it was cultivated. That was in the open field just beyond the grove. In that field was principally weeds. I don't know what was cultivated on the Kaynor part. *  *  * Where it was plowed there was a grass plat between the row of trees and practically Mr. Allen's line. I cannot tell you how far back that grass plat was from the lake shore.  *  *  *

"I can't say if that strip along the lake front had been open and not cultivated all of the time that Mr. Allen owned it. Mr. Allen never cultivated it, nor anybody for him that I know of. If anybody cultivated it, I suppose Mr. Kaynor.

"*Q.* Then if Mr. Kaynor cultivated this particular strip at any time in any season, then during that season Mr. Allen did not have possession of it, did he?

"*A.* I understand Mr. Kaynor did not cultivate this strip.

"*Q.* So far as you know the only line indicating occupancy by Mr. Allen to these premises was the fact that it was not cultivated, as I understand you.

"*A.* Why, not necessarily; as I take it that was an imaginary line, perhaps.

"*Q.* I am not asking you what you take it.

"*A.* I had no information particularly on the subject outside of Mr. Allen owned that Kaynor property."

And witness further testified in reply to a question asking what else was done to hold possession:

"Mr. Allen paid the lease on it. We were not cultivating ground; we were not doing anything especially

with it. * * * We had persons employed there to take care of all the hotel property, not of this Kaynor property particularly."

Where the barbed wire fence was located does not appear. Where the sign "No Trespassing" was located also does not appear. Where the brush and dead trees were taken up and the land leased for tents is equally uncertain. It is, however, a fair inference, from Mr. Griswold's testimony, that whatever possession there was was very shadowy.

Another witness (Waldorf) testified:

"During the last four years there has been nothing done with that field in the way of farming from the brow of the hill to the lake, unless they cut the grass off of it. I do not know that that has been done, but the field has not been plowed. It has undoubtedly been pastured. There is no fence there. I have not done anything to take possession of that property, that field, more than to trim the trees that stand there and clean it up. I trimmed some trees that stand right by the shore of the lake this spring. I never did that before to any extent. I have a little, but not to give them much of a trim. I picked up the dead limbs that were in the grove and used them for firewood. I did not make any arrangement about plowing the field. He asked me why I did not do it. He said he thought it might as well be plowed to get something off of it. Then he says to me well, I will give you half of the corn. I told him I would rather it had not been plowed. I did not think it ought to have been plowed. I don't think of any other acts of ownership or possession Mr. Allen has done since I have been there."

I think it clear from this testimony that this 15⅔ acres was vacant and unenclosed, and to all appearances it remained as a part of the farm of Ansel Kaynor. There was no such possession as would give notice to any one that the lessee, Mr. Allen, was in possession, claiming under the lease or under any title. There was no pedis possessio as in *Delashman* v. *Berry,* supra, and similar cases, wherein it is held that continued possession

and occupancy after the expiration of the lease constituted a sufficient election to accept a new term. The land had not been enclosed and made a part of the hotel enclosure. In the language of the witness, any one had access to it. It was uncultivated. A part of it, but how much does not appear, was covered with trees and brush. Mr. Allen did not use this land for any purpose. He undoubtedly obtained this lease and the option to buy in the expectation that at some future time he could use it in connection with his summer hotel. That time had not arrived when the lease expired. His occupancy then was no different from that he had when the lease was executed.

One cannot renew a lease for unenclosed or unoccupied land by simply claiming the right of possession. That possession, which is the equivalent of a notice, must be actual, visible, and exclusive.

3. Was the lease renewed as to the heirs of Augusta Kaynor, the tenants in common of Ansel Kaynor, by the agreement of renewal executed by Ansel and Levina, dated April 1, 1901, and acknowledged May 25, 1901 ? I will first discuss the question upon the theory that this renewal contract was executed April 1, eight days before the expiration of the original lease. There was no attempt at that time to renew the lease as to the heirs of Augusta Kaynor. Evidently Allen and the Kaynors, the other parties to the agreement, acted upon the belief that Ansel and Augusta were husband and wife, and that upon her death Ansel became the sole owner.

Co-tenants are not partners, neither does the relation of principal and agent exist between them except upon an express agreement or one necessarily implied. Notice to one co-tenant does not affect the rights of the other co-tenants. Each co-tenant may do what he will with his own interest. He may sell or mortgage it, but he cannot by any instrument or act of his own prejudice the rights of his co-tenants without their knowledge or consent. Co-tenants may join in the same lease, and may in that give an option for a renewal, and an option for the

sale; but one cannot bind the others by any agreement to renew. He cannot waive any of the rights which the others have under the lease. Where co-tenants join in executing a contract of lease, or sale, or deed, each is dealing with his own interest just as directly as though he executed a separate conveyance. In the absence of language in the conveyance which either expressly or impliedly makes one co-tenant the agent of the other, the one obtains no authority to speak or act for the other. Where there is a joint interest and a joint duty ( *De Witt* v. *Prescott,* 51 Mich. 298), and where each joint contractor may perform the contract and bind the others, notice to one is notice to all, and whatever one joint contractor does under the authority of the contract binds all. But where co-tenants for convenience and to save expense unite in executing one conveyance, each is acting independently of the other, and any one desiring to bind either by notice or otherwise must deal with him alone.

We are not dealing with joint lessees where each may be held to perform the contract. We are dealing with a provision where each co-tenant agrees to sell his interest and has conferred no authority in his contract upon the other to waive any provision for him. This contract is barren of any language showing the intention to establish the relation of principal and agent. It follows that if the lessee desired to take advantage of his option, either to renew or to purchase, he should have notified all the co-tenants of his election. 1 Clark & Skyles on Law of Agency, §§ 2, 92; *Blood* v. *Goodrich,* 9 Wend. (N. Y.) 68; *Jackson* v. *Moore,* 94 App. Div. (N. Y.) 504; *Tainter* v. *Cole,* 120 Mass. 162; *Tipping* v. *Robbins,* 64 Wis. 546; 17 Am. & Eng. Enc. Law (2d Ed.), p. 673; 2 Current Law, pp. 1864, 1865; *Moreland* v. *Strong,* 115 Mich. 211.

Service upon the minor heir of Augusta Kaynor would have been valid. 18 Am. & Eng. Enc. Law (2d Ed.), p. 634.

*Miner* v. *Lorman,* 70 Mich. 173, is not in conflict with

the above cases.   In that case the contest arose between the tenants in common, one of whom had received all the rent and was sued by his co-tenant to recover his share.

If the execution of this agreement for renewal was not completed until May 25th, it of course did not affect the rights of the co-tenants, and Mr. Kaynor could bind no one thereby but himself.   See authorities above cited, and also *Pearis* v. *Covillaud*, 6 Cal. 617.   The record is silent as to when the agreement was delivered.   All the record shows is that it was dated April 1st, and was acknowledged May 25th following.   What is the presumption as to the date of its execution?   Delivery was essential to complete the execution.   Deeds and contracts in regard to land are frequently dated prior to the execution. The grantor or vendor retains the deed or contract in his possession until it is acknowledged.   The presumption must be in such case that there was no complete execution until the date of the acknowledgment.   The agreement in this case was a lease for 10 years and a contract to sell the land for a stated price at the option of the lessee and the vendee.   The parties may well be held to have believed that the instrument should be executed with the formalities of a deed.   We are asked to hold that the presumption is that the date in the body of the instrument controls the date of delivery and consequently of execution.   I think the presumption is that the parties did not meet, sign, and deliver the deed until the date of the acknowledgment.

4. The contract of May 25th is valid as to the defendants Ansel and Levina, provided there are no fatal defects in the terms of the lease.   The learned counsel for Ansel and Levina urge that inasmuch as the contract cannot be enforced as to the entire property, it cannot be enforced as to the undivided half of Ansel and Levina. They had a right to renew it as to their interest.   Mr. Allen or his assignee could accept the renewal as to their interest if they chose to do so.   It does not lie in their power to refuse a part because they cannot give the whole.

*Covell* v. *Cole,* 16 Mich. 223; *Work* v. *Welsh,* 160 Ill. 468; *Waters* v. *Travis,* 9 Johns. (N. Y.) 450.

5. It is further objected that the contract is void for uncertainty as to the description of the right of way and as to the purchase price. If the contract left the price absolutely uncertain and to be determined by the subsequent agreement of the parties, the contract could not be enforced. But the contract fixes a maximum price, namely, $75 an acre. It requires no further negotiations or agreement to determine that price. They did agree that Mr. Allen could purchase the land at $75 an acre. He or his assignee has chosen to do so. An agreement to enter into a formal contract to take at least $750 worth of water per annum for 10 years was held valid. *Drummond* v. *Crane,* 159 Mass. 577. A guaranty to be responsible for any sum not exceeding $5,000 was held good. *City Nat. Bank of Poughkeepsie* v. *Phelps,* 86 N. Y. 484. So, a contract to buy 200 to 600 tons of rails was held good. *Wheeler* v. *Railroad Co.,* 115 U. S. 29. The plain construction of the contract is that the lessors agreed to take $75 per acre if they could not agree upon a less price. It was in the power therefore of the lessees to purchase upon payment of that amount.

The provision for the right of way, we think, is limited to the lease, and does not extend to the right of purchase. There may have been reasons for the use of a passage across the two adjoining parcels of land during the existence of the lease which would not apply to absolute ownership. The provision is written in direct connection with the leasing part of the contract, and is a part of that clause. Then follows the clause providing for the right of purchase of "the within described premises," plainly meaning the entire premises. There was no reference in this clause to a reservation of any right of way. This conclusion renders it unnecessary to determine the effect of the provision for a right of way, were it intended to be included in the deed to be executed when the right to purchase was exercised.

150 MICH.—2.

The decree should be affirmed as to the defendants Kaynor, with costs, and reversed as to the other defendants, with the costs of both courts.

CARPENTER, J. I approve the opinion of Justice GRANT except in one particular, viz., he denies, while I affirm, that as to the heirs of Augusta Kaynor, deceased, the lease was legally renewed. Defendants Ansel and Augusta owned the land as tenants in common. They united in executing the first lease to Dee Allen. They described themselves therein as first parties. Allen was described therein as a second party. Ansel and Augusta were joint contractors in this lease. Jointly they agreed to renew it and to insert in said renewal an option whereby Allen might purchase, not their several, but their joint, interests in the property leased, and the promises of Allen in said lease were to them jointly and not severally. Between Ansel and Augusta there was therefore the relationship of joint contractors as well as the relationship of tenants in common. Allen under these circumstances could pay the rent to either, and either of them could discharge his obligation.

"Among joint obligees any one may receive satisfaction for the entire obligation and execute a valid discharge therefor. The remedy of other joint obligees is against him and not against the one who has made payment to him." 7 Am. & Eng. Enc. Law (2d Ed.), p. 102.

In support of this text numerous authorities are cited which fully sustain it. Though only one of these two joint contractors refused to convey, both would be liable for damages for they have jointly agreed to convey the entire title. *Blood* v. *Goodrich*, 9 Wend. (N. Y.) 68. The principle underlying these decisions is, in my judgment, applicable to this case and compels us to say that the notice given to defendant Ansel of Allen's election to renew the lease was binding upon Augusta and her estate, not because she was a co-tenant, but because she was a co-contractor.

Since this opinion was prepared the case has been reargued and our attention called to authorities which expressly hold—and this is the vital proposition asserted in this opinion—that notice required by a contract is effective if given to one of several joint contractors. *Detlor* v. *Holland*, 57 Ohio St. 492; *Baker* v. *Kellogg*, 29 Ohio St. 663. See, also, *Glenn* v. *Thompson*, 75 Pa. 389; *De-Witt* v. *Prescott*, 51 Mich. 298.

The point is made that notice to Ansel Kaynor would not bind the heirs of Augusta because he was not their agent. I answer that the notice binds them, not because he was their agent, but because Augusta, having entered into a joint contract with Ansel, has in effect stipulated that the other party to that contract may serve the notice on Ansel.

My Brother GRANT makes the point that we should presume that the renewed lease, which bears date April 1st, was executed May 25th, the date of its acknowledgment. From this he infers that the lease was not renewed until after April 9th, the date when it should have been renewed. The date of the execution of the renewal lease is not controlling. The question is, Did Allen take the steps entitling him to a renewal? This he could have done by informing defendant Ansel of his election to renew before April 9th. I submit that the language of the renewal lease indicates that he had done what was necessary to entitle him to such renewal, so far as defendant Ansel is concerned. Moreover, the briefs of each counsel in this case—and there are five briefs — proceed upon that assumption.

The circumstance that no instrument formally renewing the lease and option was executed by the heirs of Augusta Kaynor is unimportant. The contention that such an instrument should have been executed is answered by the maxim, "Equity regards that as done which ought to have been done," for complainant's assignor had done all that was required to entitle him to such renewal.

I think we should, therefore, find that Allen did notify

defendant Ansel of his election to renew the lease. If I am right in the foregoing views, complainant is entitled to a decree.

McALVAY, C. J., and BLAIR, MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred with CARPENTER, J.