GUINON *v.* GUINON.

1. CANCELLATION OF INSTRUMENTS—DEEDS.

In a suit by the complainant to set aside conveyances in the nature of a deed and life lease back, executed to and by the son of complainant, the defendant has the burden of showing not only that the complainant fully understood the terms and effect of the instrument which she executed, but that her intention as expressed by the instrument was not produced by undue influence of the grantee.

2. SAME—EVIDENCE—WEIGHT.

Evidence that the complainant consulted her advisor, who directed her to go to a lawyer, whom she also consulted in relation to the conveyance of her property to her son in consideration of his care and support, and testimony tending to show that she acted without being influenced by undue pressure, that she fully understood the nature of the transaction and that nothing in relation to the transaction was misrepresented to her, also that the son undertook to pay a money rental provided for in a later contract modifying the arrangement for support and maintenance, and that the relation continued for a period of eight years; *held*, to sustain the decree in the trial court in favor of defendant.

Appeal from Kent; McDonald, J.    Submitted November 6, 1914.    (Docket No. 148.)    Decided January 4, 1915.

Bill by Sarah Guinon against Matthew Guinon and another to cancel a deed to defendant and life lease back to complainant, later modified by the written contract of the parties.    From a decree for the defendants, complainant appeals.    Affirmed.

*McHugh, Gallagher, O'Neil & McGann* (*Martin H. Carmody*, of counsel), for complainant.

*William B. Brown*, for defendants.

KUHN, J. The complainant came to Grand Rapids from Dexter, Mich., to live, about the year 1886. Her husband had died while she was living at Dexter, and she had given birth to six sons, two of whom are dead, and two daughters, both of whom are dead; the defendant Matthew Guinon being her eldest son. When she left Dexter she sold a small house and lot which she owned there, receiving about $150. About one year after arriving at Grand Rapids, she purchased the premises at 719 Hall street for $1,200. In 1894 Hall street was improved, and complainant, in order to pay the expenses of this street improvement, borrowed the sum of $300 from the Grand Rapids Mutual Building & Loan Association, of which Mr. F. O. Cutter then was, and now is, the secretary.

While the defendant her son Matthew was single he lived with his mother, but when he married she went to Cadillac, Mich., to live with another son, James, taking her furniture with her, and while she was there she rented her house on Hall street for $8 and $9 per month. Her stay with James was not satisfactory to her, and she came back to Grand Rapids, leaving her furniture at Cadillac, and lived about two months at the home of her son Matthew, which was directly across the street from her own place on Hall street. Having some trouble with her tenant about paying rent, and having no furniture for her house, and the property being in need of repairs, she went alone to the office of Mr. Cutter to advise with him about conveying the house and lot to her son Matthew. Mr. Cutter advised her to consult an attorney, and took her to the office of Mr. Charles E. Ward, an attorney, who, on the 19th day of September, 1896, she being then 56 years old, drew a deed of the house and lot at 719 Hall street from her to Matthew Guinon, the consideration being $1,700, and the property being free from incumbrances, except

the mortgage of $300 to the Grand Rapids Mutual Building & Loan Association, which had been partly paid, and which Matthew assumed and agreed to pay. The deed also had the following clauses:

"As a part of the consideration for the above conveyance, it is expressly agreed that the party of the first part, being the mother of the second party, shall reside upon said premises with second party, second party to clothe and board first party and to care for her in all respects in such a manner as is reasonable and with such care and maintenance as she has heretofore been accustomed to have, furnishing medical attendance, if necessary, and shall furnish such care and maintenance during the natural life of first party, both in sickness and health. Provided, that second party shall outlive first party, and, in case of his death during the lifetime of first party, or in case of his neglect or refusal to furnish the care and maintenance herein provided, then and in that case the party of the first part hereby reserves to herself the whole of the use, rents, profits, and income, together with the control and possession of said premises during the balance of her natural life."

From the date of this deed until March 3, 1900, complainant lived in the home of Matthew on these premises. Some dissatisfaction arising on the part of complainant with her stay at Matthew's home, because of claimed lack of attention and nursing, and failure to furnish proper clothing, and other trouble with Matthew and his wife, she again went alone to see Mr. Cutter, and asked him to draw a contract between her and Matthew under which she would get a certain sum monthly from Matthew, instead of living at his house, she expressing the wish of going to Detroit to live with other relatives. Mr Cutter again referred her to the same law office where the deed had been drawn, and upon going there she then met Mr. William B. Brown, an attorney, who prepared a contract or lease as suggested by her, which was subsequently referred by the defendants to their

counsel, and, upon being approved, was thereafter, on March 3, 1900, executed in duplicate by the parties. By this contract the complainant leased to the defendant Matthew Guinon her life estate in the premises in consideration of $10 rent per month, to be paid on the 15th of each month, and it was further provided that:

"On the death of said first party, the said second party, his heirs, representatives, and assigns, shall defray and pay the expenses of the last sickness of said first party and the expense of furnishing and conducting her funeral, the same to be provided for in a good, substantial manner, such expense to be contracted under the direction of second party.

"This lease and agreement is made and entered into by the parties hereto for the purpose of leasing and conveying to the second party hereto all the right and interest that said first party has in and to the premises herein described, and which she holds under and by virtue of a life lease, as stated in deed of record in the office of the register of deeds of Kent county, in Liber 261 of Deeds, on pages 562 and 563, and recorded on the 28th day of September, A. D. 1896, and that a violation of the terms hereof on the part of said second party will place the parties hereto in relation to said premises the same as though this agreement were not made."

The payments of rent were promptly made, excepting on one occasion when Matthew went West, and some trouble arose about his sending his mother extra sums of money, and the wife held up the rental payments, which, however, were subsequently paid by Matthew. From the time of the lease up to April 30, 1908, when the bill was filed, no complaint was made by complainant about the arrangement which had been entered into. The bill of complaint is filed to set aside and declare null and void both the deed and lease, and counsel for complainant say that the two questions presented by the record are:

"*First.* Do the facts and circumstances surround-

ing the execution of the two instruments in question
—viz., the deed and lease—constitute a fraud upon
the complainant?

"*Second.* Are the instruments involved so repug-
nant to the principles of equity and good conscience
as to warrant their being set aside and declared null
and void?"

In transactions of this nature, we fully recognize
the rule that they are regarded by courts of equity
with suspicion, and should be scrutinized with vigi-
lance. As was said in *Smith* v. *Cuddy*, 96 Mich. 562
(56 N. W. 89):

"Under the circumstances of this case, the burden
was upon the defendant to show not only that com-
plainant fully understood the terms, import, and
effect of the instrument executed, but, if her intent
was as expressed by that instrument, to show that
such intention was not produced by undue influence
exerted by himself."

A careful reading of this record has satisfied us
that the defendants have met this burden. The record
is convincing that at the time the complainant exe-
cuted the deed she—being 56 years of age—was in
good mental and physical condition, and was not in-
fluenced to do so by her son. She went alone to the
office of Mr. Cutter, in whom she had confidence, and
herself proposed making the conveyance. At the time
she made the contract as to her life estate she was
60 years of age, and must have fully understood the
nature of the transaction and its full import. We are
satisfied from the testimony that she was not imposed
upon; that nothing with relation to the transaction
was misrepresented to her; and that Matthew under-
took the payment of a money rental, as provided in
the contract, at the request of the mother. In fact,
no trouble arose with reference thereto until she had
received the benefits thereunder for a period of eight
years. The son, having taken the property at the
request of his mother, met the burdens placed upon

him, and it would, to our minds, be inequitable to now disturb the agreement which was carried out by the parties in good faith for such a length of time without complaint.

Being constrained to find that both questions raised by complainant should be answered in the negative, we affirm the decree of the court below, with costs to appellee.

BROOKE, C. J., and McALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.