WALTER *v.* WALTER.

1. MORTGAGES—CANCELLATION—FRAUD—EVIDENCE.
    In suit to cancel a note secured by second mortgage given by plaintiff father to defendant son, evidence *held,* sufficient to show that note and mortgage were obtained by son through fraudulent representations that he had an interest in farm by way of inheritance from deceased mother who had held it with the father by the entireties.

2. SAME—PARENT AND CHILD—EQUITY.
    Transactions whereby an aged father gives a second mortgage on his home to an adult son not living with him are regarded by courts of equity with suspicion and are scrutinized with vigilance.

3. EQUITY—MISTAKE OF LAW.
    While mistakes of law are not usually ground for equitable relief when standing alone, where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests or estates and enters into some transaction, the legal scope of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.

4. MORTGAGES—CANCELLATION—FRAUD—PARENT AND CHILD.

> Equity will not aid an avaricious 66-year-old, active, aggressive son to deprive his 85-year-old father of his home by refusing to cancel note and mortgage father had given son upon latter's fraudulent representation that he had an interest in the property by inheritance from deceased mother who had held title to it with the father by the entireties.

Appeal from Genesee; Bishop (Clifford A.), J. Submitted January 10, 1941. (Docket No. 73, Calendar No. 41,410.)  Decided March 11, 1941.

Bill by Benjamin Walter against Frank Walter and another to restrain sale of land under mortgage foreclosure and to cancel a mortgage. Decree for plaintiff. Defendant Walter appeals. Affirmed.

*Ralph M. Freeman,* for plaintiff.

*Herbert W. Smith,* for defendant.

BUSHNELL, J.  Plaintiff, Benjamin F. Walter, became the owner of the east half of the southwest quarter of section 17, township 6 north, range 8 east in Atlas township, Genesee county, Michigan, in 1873, and of the east half of the northwest quarter of the same section in 1890 or 1892. These parcels are hereinafter designated as the south and north eighties, respectively. Plaintiff was married in 1872, and his wife died in 1919. They held title to the 160 acres jointly as tenants by the entireties. Plaintiff has lived upon this property since 1872. Plaintiff became 85 years old on May 21, 1939. Defendant Frank Walter, born in 1873, is the eldest of plaintiff's nine children. He became 21 years old in 1894 and, at the time of the trial of this case, he was 66 years old. He stayed at home and helped his father until his marriage at the age of 30 in 1903.

In 1930 plaintiff sold the north eighty to his son, Claude, and on October 8th of that same year executed and delivered to his son, Frank, a second mortgage on the south eighty to secure a note in the sum of $1,000. He had previously given a mortgage in 1927 on the south eighty to the Northwestern Mutual Life Insurance Company to secure a note in the sum of $2,000. This first mortgage was purchased by defendant Frank Walter after its time of payment had been extended by the insurance company in 1933, and there is a small balance yet due upon it. Plaintiff says in his brief that foreclosure proceedings have been instituted by Frank on this first mortgage. However, the first mortgage is not involved in the present litigation.

After defendant began foreclosure proceedings on his second mortgage but prior to the date of foreclosure sale, plaintiff filed his bill seeking cancellation on the ground that this mortgage had been fraudulently secured. In support of this claim plaintiff testified that Frank represented to him that he had an interest in the farm through inheritance from his mother. Plaintiff said that defendant—"came out there and said his mother had a claim in it, and by God, he was going to have it, that is about the way he worded it. I said 'Frank, I don't know about that.' Well, he did; he had had counsel on it, he knew just exactly what he was doing. I said I never had any counsel and did not know anything at all about it."

It is defendant's contention that the mortgage was security for a note in payment of an agreed sum representing his wages for work performed after he became 21 years of age. Plaintiff denied that Frank did any work on the farm after 1903, and said that, after Frank became 21, he operated a hay presser and bean thresher and was paid for it. Plaintiff said that, although he had loaned Frank money, Frank

never claimed that he had any money coming for services rendered, and always repaid these loans; that on one occasion he bought some bonds from Frank and on another sold him a horse which he afterward repurchased from him at an auction sale.

The testimony of the father is corroborated by that of his daughter, Ida M. Mitchell, who is now 63 years old and who left the farm when she was 22 years old. She described Frank's unsuccessful efforts to persuade her to join with him in an attempt to obtain from the father a share of their mother's interest in the farm. Mrs. Mitchell's husband testified to the same effect. Clarence Walter, another son of plaintiff, now 52 years old, who left home when he was married at the age of 21, testified in a like manner, as did a disinterested witness who was boarding at the Mitchell home in 1938. None of these witnesses had ever heard Frank claim that he had any unpaid wages due him.

Defendant categorically denied all that plaintiff and his witnesses said. He insisted that the $1,000 note was in settlement of a disputed claim for services rendered his father between the years 1894 and 1903. He admitted that his father had made mortgage payments and said they had been credited on the first mortgage which he had purchased from the Northwestern Mutual Life Insurance Company. Frank's wife testified that she heard several conversations between plaintiff and her husband ''in reference to his having worked for his father and having some money coming.'' She insisted that the conversations between the parties resulted in a computation of $1,536, and that they finally agreed upon $1,000.

The trial judge filed a written opinion in which he concluded that the contention of defendant that the $1,000 note was given in settlement of his claim for services rendered his father after he became 21

years of age was an afterthought. The trial judge said that "the evidence shows very clearly that the defendant went to his sister and tried to get her to go in with him in an attempt to get the father to give him notes or securities for what he claimed was their interest in the property on account of the mother's estate. He also states that he did not know the property was joint until after the suit was brought. Taking these facts into consideration, with the fact that several business transactions had been had before and no claim made for wages, the Court is satisfied that plaintiff gave this note and mortgage solely on account of the wrongful claim of the defendant, Frank Walter, that the plaintiff was liable to him on account of money which the mother had had, and that there was absolutely no consideration for this note and mortgage."

Defendant appeals from a decree cancelling the note and discharging the second mortgage.

The testimony is convincing that the $1,000 note and second mortgage were obtained by the defendant through fraudulent representations, that he had an interest in his father's farm by way of inheritance from his mother. There is, of course, no such interest because his mother held title with his father by the entireties and, upon her death, her interest passed to her husband as the survivor.

Transactions like those in the instant case are regarded by courts of equity with suspicion and are scrutinized with vigilance. *Guinon* v. *Guinon,* 184 Mich. 56.

Plaintiff's ground for cancellation of the second mortgage is a claimed fraudulent misrepresentation of a matter of law. Mistakes of law are not usually a ground for equitable relief when standing alone.

"But where a person is ignorant or mistaken with respect to his own antecedent and existing private

legal rights, interests, or estates, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact." *Renard* v. *Clink,* 91 Mich. 1, 3, and authorities cited at page 3 (30 Am. St. Rep. 458).

See, also, those annotated in 75 A. L. R. 896 *et seq.*

In *Tompkins* v. *Hollister,* 60 Mich. 470, 480, the court said:

"Where one relies upon another, and has a right so to rely, and the person relied upon omits to state a most material legal consideration within his knowledge, of which the other is ignorant, affecting his rights, and the person thus ignorant acts under this misplaced confidence and is misled by it, a court of equity will afford relief, especially if such action is to the advantage of the person whose advice is taken, even though no fraud was intended." See authorities there cited.

Equity will not aid an avaricious, 66-year-old, active, aggressive son to deprive his 85-year-old father of his home under the circumstances disclosed in this case. *Platt* v. *Platzki,* 277 Mich. 700. See, also, *Williams* v. *Williams,* 198 Mich. 1, and authorities cited in *Beattie* v. *Bower,* 290 Mich. 517, p. 526 *et seq.*

The decree is affirmed, with costs to appellee.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, MC-ALLISTER, WIEST and BUTZEL, JJ., concurred.