HILL *v.* HAIRSTON.

1. WITNESSES—ATTORNEYS ARE COMPETENT WITNESSES FOR CLIENTS.
   It is not seemly for attorneys to rush to the aid of their clients with their own testimony, but they are competent witnesses, and conditions arise where their testimony is essential.

2. SAME—ATTORNEY AS WITNESS—DEEDS.
   Testimony of attorney for defendant grantee in a deed that grantee knew nothing of the deed until after its execution was properly admitted in suit by heir of grantor to set the deed aside.

3. DEEDS—PARISHIONER AND SPIRITUAL ADVISER—EQUITY.

Transaction whereby an elderly woman gave deed of farm to her spiritual adviser is regarded by court of equity with suspicion and is scrutinized with vigilance.

4. WILLS—UNDUE INFLUENCE—PRESUMPTIONS ARISING FROM FIDUCIARY RELATION.

A presumption of undue influence arises where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser, whether for his own personal advantage, or for the advantage of some interest of which he is a representative.

5. GIFTS—UNDUE INFLUENCE—PRESUMPTIONS—BURDEN OF PROOF.

When the presumption of undue influence arises because the grantee of a deed or beneficiary under a will occupies a relation of spiritual adviser to grantor or testator an explanation is called for where no consideration was given for the conveyance but the burden of proof does not shift from the one seeking to set aside the instrument on the ground of undue influence.

6. DEEDS—SPIRITUAL ADVISER—UNDUE INFLUENCE—PRESUMPTIONS.

Presumption that deed of property to one in such confidential and fiduciary relationship as a spiritual adviser was procured through undue influence is rebuttable.

7. EVIDENCE—PRESUMPTIONS—WEIGHT AGAINST EVIDENCE.

A rebuttable or prima facie presumption has no weight as evidence; it may establish a prima facie case, but, if challenged by rebutting evidence, the presumption cannot be weighed against the evidence, and upon introduction of supporting evidence, the actual evidence introduced is then weighed without giving any evidential force to the presumption itself.

8. APPEAL AND ERROR—CHANCERY CASES—REVIEW OF EVIDENCE DE NOVO.

On appeal in a chancery case the Supreme Court must take the record as it finds it and consider the evidence de novo.

9. SAME—DEED TO GRANTOR'S SPIRITUAL ADVISER—SCOPE OF REVIEW.

On appeal from decree setting aside deed of farm by parishioner to grantor's spiritual adviser, the Supreme Court does not pass upon the spiritual value of the doctrine promulgated by the grantee.

10. Gifts—Spiritual Adviser—Presumptions—Undue Influence—
Rebuttal Evidence.

In suit by heir of grantor of farm against grantee, who had been
the grantor's spiritual adviser prior to her death, defendant's
evidence of grantor's desire to make him a gift *inter vivos*, that
grantee was not present when it was executed and knew noth-
ing about it until informed later of its execution and that
grantor subsequently affirmed the gift *held*, sufficient to rebut
the presumption of undue influence arising from defendant's
relation to grantor.

11. Deeds—Undue Influence—Mental Competency—Evidence—
Presumptions.

In suit by heir of grantor of farm against grantee, who had been
the grantor's spiritual adviser prior to her death, where plain-
tiff made a *prima facie* showing of undue influence and defend-
ant introduced testimony showing that grantor was not in-
fluenced at the time of the execution of the deed in any way
by defendant or that she was then mentally incompetent to ex-
ecute it, plaintiff failed to sustain his burden of proof of
mental incompetency or undue influence.

Appeal from Washtenaw; Sample (George W.), J.
Submitted October 21, 1941. (Docket No. 81, Calen-
dar No. 41,775.) Decided December 2, 1941.

Bill by George Hill, administrator of estate of
Elenora Turner, also known as Ella Turner, de-
ceased, against Rev. Samuel L. Hairston and
another to set aside a deed. Decree for plaintiff.
Defendant appeals. Reversed.

*Lewis, Rowlette & Brown*, for plaintiff.

*James N. McNally (Tilden M. Gallagher*, of coun-
sel), for defendant.

Bushnell, J.    This is an appeal from a decree
cancelling a deed executed by Ella Turner on May
31, 1935, by which she conveyed a small farm in
Washtenaw county to defendant, Rev. Samuel L.

Hairston. Ella Turner died in the city of Detroit on July 15, 1940, at the age of 70. Plaintiff is her nephew and the administrator of her estate. Defendant Hairston is the head of a church known as St. Paul's Universalist Spiritualist Association of Christ, which he organized in 1929. Prior to 1930, the deceased was a member of the Second Baptist Church in Detroit. She gave up this membership to join defendant's church.

Ella Turner had $5,587.54 on deposit in a bank on February 11, 1933, and a balance of $1,117.50 at the time of her death. Plaintiff testified that he knew that she advanced money to defendant or his church at various times. A promissory note in the sum of $125, payable to Ella Turner, secured by a chattel mortgage on the furnishings of defendant's church, was received in evidence. Both these instruments bore defendant's signature. Plaintiff also testified that his aunt was a roomer in Hairston's home until 1932 or 1933. However, at the time the deed was executed, Ella Turner was living at her brother's home in Detroit.

The only testimony pertaining to the issues of mental incompetency and undue influence was given by Mary Johnson and Hattie M. Day, but practically all this testimony is confined to a period subsequent to the execution of the deed. Mary Johnson, with whom the deceased lived during the last four years of her life, testified that during this time she was in a feeble condition. Hairston and his wife visited Ella Turner quite often, talked with her alone, and occasionally took her out. She said that, "After visiting with Rev. Hairston and the members of his church she would act just like she was drunk or something;" that she would sometimes call out for Hairston even though he was not present. On various occasions, Ella Turner sent Mary Johnson to

Hairston for medicine, and he gave her some herbs that looked like senna leaf tea.

Hattie M. Day, a niece of the deceased, testified that, after Ella Turner's husband, Charles Turner, died in 1931, her aunt accused her of trying to get money from her and charged her with not being a Christian. Because of this, Hattie Day returned a note for $375 that her aunt had given her for her share of her uncle's (Frank Turner) interest in the farm.

Hairston was called as an adverse witness under the statute, 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915), and, over objection of his counsel that conversations between the deceased and himself were privileged (see 3 Comp. Laws 1929, § 14215 [Stat. Ann. § 27.910]), testified to the following facts: He was 45 years of age, had been married four times, had been blind since 1925, and studied by having someone read to him. His studies included "mediumship, psychology, Biblical study and disseminating the teachings of Christ." Although he never prescribed any medicine for Ella Turner, he went to the drug store and bought what medicine she wanted. He said, "I didn't hold myself out to anyone as being able to heal. I do claim to be a divine healer." He also said he practiced "psychological therapy," and prayed for Ella Turner whenever she asked him to do so.

He said that he had known Ella Turner since approximately 1926, and that he only advised her on spiritual matters. He claimed to know nothing about the deed until he was advised by attorney McNally that the title to the property had been put in his name. He afterwards received the deed through the mail from the register of deeds' office in Ann Arbor.

Defendant admitted that he had been arrested and charged with reading fortunes by tea leaves, but

said he was discharged from custody because the judge said that, being blind, he could not read tea leaves.

Counsel of record for the defendant, who had also been attorney for Ella Turner at the time the deed was executed, testified for the defendant. The trial judge questioned the propriety of counsel testifying, but permitted him to do so, with certain restrictions. The trial judge properly called counsel's attention to *In re Dwyer's Estate*, 251 Mich. 346, where the court said:

"It is not seemly for attorneys to rush to the aid of their clients with their own testimony. But they are competent witnesses and conditions arise where their testimony is essential."

Counsel stated that Hairston knew nothing of the deed until he had been informed that Ella Turner had given him the property.

Other witnesses testifying for the defendant described Ella Turner as the "Supreme Mother" of Hairston's church. One said that she had been told by Ella Turner that she loved Reverend Hairston as a son and wanted him to have all her property. Another said that Mrs. Turner told her:

" 'I am just trusting in the Lord and I am so happy. I am just waiting on the Lord's will. Reverend has done so much for me. For 40 years I was a member of Second Baptist Church and when I went to Reverend I was almost on the verge of death. The doctor had given me up to die and I went to Reverend and he healed me.' And she says, 'I never will be able to do enough for him.' And she told me that she had willed him this farm and she says, 'I don't know of anyone else I would rather have it than he. If it hadn't been for him I would have been gone years ago.' "

Still another testified that, in March of 1940, some three or four months prior to her death, Ella Turner made a statement to the entire congregation regarding her property, as follows:

" 'Dear Christian brothers and sisters. I want to make a statement here before my brothers and sisters in the church,' she said. 'The rumor is out that Reverend Hairston has taken my property,' she said. 'I deeded Reverend the farm as a precious gift and he hasn't taken no property from me. Furthermore,' she said, 'I wanted him to have all my property but I have deeded him the farm.' "

This witness added that, at the time this statement was made, there were around 100 or more people present.

There is no direct testimony in the record to dispute the recital in the instrument that it was the free act and deed of the grantor. Nor is there sufficient testimony that Ella Turner was influenced at the time of the execution of the deed in any way by defendant grantee or that she was then mentally incompetent. The deed is regular in form and recites consideration of $1.

The trial court held that the presumption of fraud had not been overcome by the proofs, and that the deed should be set aside and the property disposed of according to law.

Such a transaction as disclosed by the record in the instant case is regarded by courts of equity with suspicion and is scrutinized with vigilance. *Walter* v. *Walter*, 297 Mich. 26.

"There are certain cases in which the law indulges in the presumption that undue influence has been used, as where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser, whether for his own personal advantage, or for the advantage of some interest of which he is a repre-

Hill v. Hairston. 679

sentative.'' *In re Hartlerode's Estate,* 183 Mich. 51, 60.

But nevertheless the burden does not rest upon the defendant to show that the transaction was free from undue influence.

''It is true that a presumption is raised that calls for an explanation, but the burden of proof to show undue influence is not thereby shifted.'' *In re Bailey's Estate,* 186 Mich. 677, 692.

We are not unmindful that this court said as recently as *Beattie* v. *Bower,* 290 Mich. 517, 529, that, under the authority of *Connor* v. *Harris,* 258 Mich. 670, and authorities therein cited:

'' 'The grantor was peculiarly under the care, control, and domination of defendant, who stood in a fiduciary relation to her, and obtained, without consideration, a large amount of property from grantor. Under such circumstances the burden of proof is upon defendant to show the fairness and good faith of the transaction.' ''

The rule is better expressed in the quotation from *Gillett* v. *Michigan United Traction Co.,* 205 Mich. 410, in *Re Cotcher's Estate,* 274 Mich. 154, 159, as follows:

'' 'It is now quite generally held by the courts that a rebuttable or prima-facie presumption has no weight as evidence. It serves to establish a prima-facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself.' ''

A testamentary conveyance of property to the pastor of St. Peter's Cathedral, to be expended for the use and benefit of the Barago Parochial School

of Marquette, was upheld in the *Cotcher Case* even though the testatrix at the time of executing the will was in a weakened physical condition. The court there said:

"While there is a presumption of undue influence where a person devises property to one in such a confidential and fiduciary relationship as a priest, *In re Bromley's Estate*, 113 Mich. 53, yet it is a rebuttable one."

This court must take the record as it finds it and, on appeal, consider the evidence *de novo*. The same rule of law which was applied to St. Peter's Cathedral of Marquette must now be applied to St. Paul's Universalist Spiritualist Association of Christ of Detroit. We do not pass upon the spiritual value of the doctrine promulgated by the defendant, nor are we called upon to do so. We are convinced, however, from an examination of the testimony, that "Supreme Mother" Turner did receive spiritual solace from the defendant, Samuel L. Hairston.

Plaintiff made a prima-facie showing of undue influence. Defendant's evidence shows that Ella Turner wanted to make a gift *inter vivos* of this property to defendant, that he was not present when the deed was executed, knew nothing about it until he was informed of its execution, and that Ella Turner subsequently affirmed the gift. This evidence rebutted the prima-facie case. Plaintiff failed to sustain the burden of proof of mental incompetency and undue influence.

In the light of the evidence in this record, the deed must stand, and the decree of the circuit court vacated. A decree may be entered here holding the deed valid. It is so ordered, with costs to appellant.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.