SHELL OIL COMPANY v ESTATE OF KERT

Docket No. 94741. Submitted March 19, 1987, at Lansing. Decided
July 7, 1987. Leave to appeal applied for.

On July 10, 1958, Benjamin Kert and his wife, Esther Kert,
signed a lease on a parcel of property owned by Benjamin Kert
and located at the northeast corner of Orchard Lake and Maple
Roads in West Bloomfield Township, Oakland County, to Shell
Oil Company. The lease, typed on Shell's printed form, identi-
fied the couple as "Ben Kert and Esther Kert, His Wife, . . .
(herein called 'Lessor', whether one or more)." It also contained
the following provisions, among others: "Lessor covenants that
Lessor is well seized of and has good right to lease the prem-
ises, will warrant and defend the title thereto, and will indem-
nify Shell against any damage and expense which Shell may
suffer by reason of any lien, encumbrance, restriction or defect
in the title to or description herein of the premises. If, at any
time, Lessor's title or right to receive rent hereunder is dis-
puted, or there is a change of ownership of Lessor's estate by
act of the parties or operation of law, Shell may withhold rent
thereafter accruing until Shell is furnished proof satisfactory to
it as to the party entitled thereto . . . . This lease shall be
binding on and inure to the benefit of the heirs, administrators,
executors, successors and assigns of Lessor, and the successors
and assigns of Shell." The lease ran for a term of fifteen years,
but Shell had the option of extending it for two additional five-
year periods under generally the same terms and conditions.
The lease commenced when Shell completed construction of an
automobile service station on the premises, which apparently
occurred in 1959 and meant that the lease expired in 1974. If
the two options were exercised, as they were, the lease would
end in 1984. Both Benjamin and Esther Kert signed the lease.
Benjamin Kert died testate in 1969, leaving one-half of his

REFERENCES

Am Jur 2d, Contracts, § 501.
Am Jur 2d, Cotenancy and Joint Ownership, §§ 1, 22-27, 31, 40-47,
50.
Am Jur 2d, Husband and Wife, § 187.
Accountability of cotenants for rents and profits or use and occupa-
tion. 51 ALR2d 388.

estate to his widow, Esther Kert, and the other half to various children and grandchildren. His will was not probated, however, until Esther Kert initiated probate proceedings in January, 1984. Following her husband's death, Esther Kert contacted Shell in 1970 and requested that payments be made directly to her. When Shell requested a "letter testamentary," Esther Kert's attorney responded by letter claiming that under Michigan law Benjamin and Esther Kert, his wife, were tenants by the entirety, so that on Benjamin's death, Esther Kert became the sole owner as surviving tenant by the entirety. Shell responded by requesting a copy of the warranty deed establishing the alleged tenancy by the entirety. The attorney responded by sending a copy of an administrator's deed dated February 5, 1952, which conveyed the subject real property to Benjamin Kert only. In his letter of transmittal, the attorney made no further reference to the matter of a tenancy by the entirety but, nevertheless, after that Shell apparently paid the rent to Esther Kert. On June 29, 1972, Esther Kert and Shell amended the 1958 lease, purporting to give Shell the option for two additional five-year extensions of the lease which, if exercised, would cause the lease term to extend to 1994. In the agreement amending the lease, Esther Kert was merely described as "a widow." If these options were exercised, the renewals would be on the same terms and conditions as the original lease except that the rental minimums and maximums would be increased. After execution of the amendment, Shell invested more than $200,000 for improvements to the service station on the property. In April, 1974, Shell exercised its first five-year option to renew by sending written notice to Esther Kert. Apparently, Shell also exercised its option in 1979. In early 1984, as part of a road-widening project, the Oakland County Road Commission notified the estate of Benjamin Kert that the road commission believed the estate had an interest in the subject real property. Thereafter, in a letter of February 2, 1984, Harriett Housman, personal representative of the estate, requested that Shell contact her to discuss the negotiation of a new lease, asserting that the original lease had expired. Shell tried to rely on the amended lease, but the estate's counsel replied that the amendment was of no force or effect, stating, "Shell's attempted exercise of an option that may have been granted by someone other than the titleholder, or the estate of the titleholder, is null and void." The letter concluded that the estate intended to take possession of the property of June 30, 1984, the time when the 1958 lease would expire. Shell Oil Company brought an action in the Oakland Circuit Court against the estate of Benjamin Kert, its personal representative

and the various individuals inheriting under the will of Benjamin Kert for a declaration that the lease was valid and enforceable. The court, Robert Charles Anderson, J., granted summary disposition for plaintiff, holding that Shell's rights under the lease amendment of June 29, 1972, were valid and binding on the heirs at law of Benjamin Kert, that the individual defendants are tenants in common with respect to their interests in the property and that the estate of Benjamin Kert and the named heirs are entitled to an accounting from defendant Esther Kert for all monies received by her from Shell since Benjamin Kert's death on September 27, 1969. Defendant estate of Benjamin Kert appealed.

The Court of Appeals *held:*

1. The amendment to the lease should not be rescinded for a mutual mistake. First, the Court found the record to be weak in supporting the conclusion that there was a belief by one or more parties which was not in accordance with the facts. Second, the Court did not find that rescission would be equitable.

2. The estate of Benjamin Kert should not have what amounts to a belated veto power over Esther Kert's actions in amending the lease with respect to the other interests in the property. Under the circumstances, the estate and the named heirs are bound by the 1972 amendment or, at the very least, are equitably estopped from forcing a renegotiation of the lease.

3. The estate and the named heirs have a right to an accounting from Esther Kert, not plaintiff, for the last ten years of the extended lease.

Affirmed in part and reversed in part.

1. HUSBAND AND WIFE — DOWER.

A married woman possesses an inchoate dower right in real property acquired by her husband during the marriage in his name alone.

2. CONTRACTS — MISTAKE — RESCISSION.

A contract may be rescinded because of mutual mistake, but the remedy is granted only in the sound discretion of the court; for. a mistake to warrant rescission there must have been a belief held by one or both of the parties not in accord with the facts and the erroneous belief must relate to a basic assumption of the parties upon which the contract is made and which materially affects the agreed performances of the parties.

3. TENANTS IN COMMON — ALIENATION OF PROPERTY.

In general, absent an agency relationship, a lease or other dis-

posal of property by one cotenant is not binding upon the other cotenants; however, under certain conditions the other cotenants may be bound by the disposal or, at least, estopped from contesting its validity.

4. TENANTS IN COMMON — ACCOUNTING.

A statute provides a right of action by one cotenant in common against another cotenant for receiving more than his just proportion of the rents or profits of the estate; the cotenant referred to in the statute is a feeholder, not a leaseholder (MCL 554.138; MSA 26.1108).

*Giles & Lucas, P.C.* (by *Thomas V. Giles* and *John M. Lucas*), for plaintiff.

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman*), and *Michael A. Szymanski,* for Estate of Benjamin Kert.

Before: MACKENZIE, P.J., and BEASLEY and E. A. QUINNELL,* JJ.

BEASLEY, J. Plaintiff, Shell Oil Company, filed this action on February 22, 1985, seeking a declaratory judgment that a 1972 amendment to a lease of which plaintiff was lessee was valid and enforceable. Both plaintiff and defendant, estate of Benjamin Kert, moved for summary disposition. Plaintiff's motion was brought pursuant to MCR 2.116(C)(9) on the basis that defendant estate had failed to state a valid defense to plaintiff's declaratory judgment action. Defendant's motion was brought pursuant to MCR 2.116(C)(8) and (10) on the grounds that plaintiff had failed to state a claim on which relief could be granted and that, except as to the amount of damages, there was no genuine issue as to any material fact so that defendant was entitled to judgment as a matter of law. On June 23, 1986, the trial court denied

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant's motion and granted plaintiff's motion. On August 4, 1986, defendant's motion for reconsideration was denied, and defendant now appeals as of right.

The essential bare facts are not disputed, but the parties do not agree as to their legal significance. On July 10, 1958, Benjamin Kert and his wife, Esther Kert, leased a parcel of property located at the northeast corner of Orchard Lake and Maple Roads in West Bloomfield Township, Oakland County, to plaintiff. The lease, typed on plaintiff's printed form, identified the couple as "Ben Kert and Esther Kert, His Wife, . . . (herein called 'Lessor', whether one or more)." It also contained the following provisions, among others:

> Lessor covenants that Lessor is well seized of and has good right to lease the premises, will warrant and defend the title thereto, and will indemnify Shell against any damage and expense which Shell may suffer by reason of any lien, encumbrance, restriction or defect in the title to or description herein of the premises. If, at any time, Lessor's title or right to receive rent hereunder is disputed, or there is a change of ownership of Lessor's estate by act of the parties or operation of law, Shell may withhold rent thereafter accruing until Shell is furnished proof satisfactory to it as to the party entitled thereto.

> *     *     *

> This lease merges and supersedes all prior negotiations, representations and agreements, and constitutes the entire contract, between Lessor and Shell concerning the leasing of the premises and the consideration therefor. Neither this lease nor any amendment or supplement thereto shall be binding on Shell unless and until it is signed in Shell's behalf by a representative duly authorized by its Board of Directors, and a copy thereof so signed is delivered to Lessor. This lease shall be

binding on and inure to the benefit of the heirs,
administrators, executors, successors and assigns
of Lessor, and the successors and assigns of Shell.

The lease as drafted ran for a term of fifteen
years, but plaintiff had the option of extending it
for two additional five-year periods under gener-
ally the same terms and conditions. The lease
commenced when Shell completed construction of
an automobile service station on the premises,
which apparently occurred in 1959 and meant that
the lease expired in 1974. If the two options were
exercised, as they were, the lease would end in
1984. Both Benjamin and Esther Kert signed the
lease. Following its execution, plaintiff constructed
the service station on the property and subleased
it.

Benjamin Kert died testate in 1969, leaving one-
half of his estate to his widow, Esther Kert, and
the other half to various children and grandchil-
dren, who are named defendants in this case. His
will was not probated, however, until Esther Kert
initiated probate proceedings in January, 1984.

In the interim following her husband's death,
Esther Kert contacted plaintiff in 1970 and re-
quested that payments be made directly to her.
When plaintiff requested a "letter testamentary,"
Esther Kert's attorney, Harvey Tennen, responded
by letter claiming that under Michigan law Benja-
min and Esther Kert, his wife, were tenants by the
entirety, so that on Benjamin's death Esther Kert
became the sole owner as surviving tenant by the
entirety. Plaintiff responded by requesting the
furnishing to it of a copy of the warranty deed
establishing the alleged tenancy by the entirety.
Tennen responded by sending a copy of an admin-
istrator's deed dated February 5, 1952, which con-
veyed the subject real property to Benjamin Kert

only.[1] In his letter of transmittal, Tennen made no further reference to the matter of a tenancy by the entirety but, nevertheless, after that plaintiff Shell apparently paid the rent to Esther Kert.

On June 29, 1972, Esther Kert and plaintiff Shell amended the 1958 lease, purporting to give plaintiff the option for two additional five-year extensions of the lease which, if exercised, would cause the lease term to extend to 1994. In the agreement amending the lease, Esther Kert was merely described as "a widow." If these options were exercised, the renewals would be on the same terms and conditions as the original lease except that the rental minimums and maximums would be increased.[2] After execution of the amendment, plaintiff Shell claims to have invested more than $200,000 for improvements to the service station on the property.

In April, 1974, Shell exercised its first five-year option to renew by sending written notice to Esther Kert. Apparently, Shell also exercised its option in 1979. In early 1984, as part of a road-widening project, the Oakland County Road Commission notified defendant, estate of Benjamin Kert, that the road commission believed the estate had an interest in the subject real property. Thereafter, in a letter of February 2, 1984, Harriet Housman, personal representative of the estate, requested that plaintiff contact her to discuss the negotiation of a new lease, asserting that the original lease had expired. Plaintiff tried to rely on the amended lease, but defendant's counsel replied that the amendment was of no force or effect,

---

[1] The deed ran to "Ben Kert, his heirs and assigns forever," but did not describe Ben's marital status.

[2] The rent under the lease and renewals was computed on a cents per gallon of gasoline delivered to the station, with a floor (a minimum) and a ceiling (a maximum) per month.

stating: "Shell's attempted exercise of an option that may have been granted by someone other than the titleholder, or the estate of the title-holder, is null and void." The letter concluded that the estate intended to take possession of the property on June 30, 1984, the time when the 1958 lease would expire. This lawsuit resulted.

After granting plaintiff's motion for summary disposition, as previously indicated, the trial judge signed a judgment which provided that (1) plaintiff's rights under the lease amendment of June 29, 1972, "are valid and bind the heirs at law of Ben Kert"; (2) defendants are tenants in common with respect to their interests in said property; and (3) defendants, the estate of Benjamin Kert and the named heirs, are entitled to an accounting from defendant, Esther Kert, for all monies received by her since Ben Kert's death on September 27, 1969, under the terms of the 1958 lease agreement between plaintiff Shell and Ben and Esther Kert, and the 1972 lease amendment between plaintiff Shell and Esther Kert.

The issues presented on appeal are these: (1) whether the amendment should be rescinded for mutual mistake; (2) if not, whether the amendment is binding on the estate; (3) whether defendant estate is entitled to an accounting or compensation; and (4) if so, whether it is plaintiff or Esther Kert who is compelled to make that accounting or compensation.

The record before us indicates that at the time of the original Shell lease in July, 1958, Ben Kert was the owner of the subject real estate and his wife, Esther Kert, was *not* an owner. As Ben's wife, Esther did possess an inchoate dower right[3]

[3] See Michigan Land Title Standards, 4th ed, prepared by the Title Standards Committee, Real Property Law Section, State Bar of Michigan, Chapter IV, Dower, Standard 4.1.

in 1958, but there was no tenancy by the entirety.[4] Thus, when Ben died in 1969, Esther did not take this real property as a surviving widow. As previously indicated, Ben died testate, leaving one-half of his estate to his widow, Esther Kert. Thus, on Ben's death, Esther Kert had a choice. She could either take under his will or she could take her dower rights and other statutory rights under the intestacy laws. Although we assume that her share under his will exceeded her dower and other statutory rights under the intestacy laws, she made no choice for fifteen years.

However, also as previously indicated, Esther Kert did sign the 1958 lease as a party, along with her husband. It is not surprising that Esther signed since the lease contained a provision that permitted Shell to match any bona fide offer to purchase that Kert might receive and, in such event, required the lessor to convey good and marketable title to Shell. Since Esther possessed an inchoate dower right in the real property, Shell's right to purchase would only be effective if Esther, as Ben's wife, was obligated to join in the conveyance. By being a party to the lease, she was so obligated to join in such a conveyance: thus, one good reason for her signing the lease. Further, since by signing Esther became a party to the lease, it is clear that during the life of the lease the notice provisions could be complied with by Shell by directing written notice to either Esther or Ben. It is also clear that, as a party to the lease, rent could be delivered to her as well as to him, and rent was paid to her during these years. However, we believe that the lease also meant that during its term Esther Kert was entitled to

---

[4] See *Rogers v Rogers,* 136 Mich App 125, 134-135; 356 NW2d 288 (1984), lv den 424 Mich 868 (1986)

the rents, until 1984 when the original lease, as extended, expired.

It should be noted that when she eventually filed the will for probate in 1984, if Esther Kert took under the will, she became a tenant in common with the remaining heirs or devisees. Viewed solely as a tenant in common, she would only be able to amend the lease to the extent that her authority as a cotenant permitted.

Plaintiff argues, however, that the terms of the 1958 lease quoted previously constitute a grant of authority by Benjamin Kert to Esther Kert, empowering her to lease the *entire* property, not merely the undivided half interest she received under the will. Plaintiff's argument goes like this. Benjamin Kert represented in the 1958 lease that he and Esther Kert were the "lessor," that the "lessor" had good title, and that the lease would be binding on and inure to the benefit of the heirs, administrators, successors and assigns of the "lessor," and successors and assigns of plaintiff. This, according to plaintiff, means that *Benjamin* Kert warranted *Esther* Kert's title, giving her the means to dispose of the property completely without consulting him. Plaintiff boldly asserts that, if Benjamin Kert were alive today, he could not "contest the right, title or authority of his wife to grant the Lease Amendment options of June 28, 1972." The argument continues that, because Benjamin Kert's heirs could take no greater rights in the property than he had himself, they also had no power to prevent Esther Kert from leasing the entire property during the term of the lease.

We do not agree with plaintiff's surmises. First of all, the language of the lease simply does not say what plaintiff claims it does. It is true that plaintiff's form of lease listed the two spouses together as a single "lessor" and that it contained

warranties of title and was made binding on heirs and assigns. However, this does not mean that each of the parties signing as "lessor" warranted the title and authority of every *other* party signing as "lessor." The law does not provide that this language places such a burden on contracting cotenants. Secondly, even if the lease did contain such an unusual cross-warranty, that warranty would not be sufficient to give one cotenant (if she *was* a cotenant) the power to encumber the entire property without consent of the other. There is no such common estate in which a cotenant has such a power. It is true that Benjamin Kert could have granted such power to a cotenant, or even to his wife, Esther Kert, without her being a cotenant, under principles of agency, but the lease does not contain any language giving rise to such an agency. In fact, plaintiff itself goes so far as to say that "any contention by the heirs that Shell is relying on a ratification or agency theory is erroneous."

The principal authority relied upon by plaintiff in support of its contention is *Wright v Kaynor.*[5] In that case, two tenants in common, under the apparently mistaken belief that they were tenants by the entirety, conveyed a lease to a third party with an option to renew and to buy. The lease specified that it was null and void upon the third party's failure to pay rent within thirty days "after the time stated in this lease." One of the tenants in common died before either option was exercised. The third party continued paying rent, but only to the surviving cotenant and his new wife. Then the third party exercised his option. The heirs of the deceased cotenant "refused to recognize the lease as binding upon them," as did the surviving cotenant. The Supreme Court held

---

[5] 150 Mich 7; 113 NW 779 (1907).

that the lease was legally renewed as to both the surviving cotenant and the heirs of the deceased cotenant. The Court reasoned that the two cotenants were also joint contractors, each of whom had given the third party the right to renew and buy. The Court pointed out that notice required by contract is effective if given to one of several joint contractors, and that the deceased cotenant had stipulated to a joint contract so that notice to one would serve.[6]

While the decision in *Wright* may have been correct, plaintiff's reliance on it here is misplaced. First of all, as we previously pointed out, Esther Kert's only legal right in the property at the time the lease was made was her inchoate dower right, so that it cannot be correctly said that she was a joint contractor, like the deceased cotenant in *Wright*. As indicated, presumably she joined in the 1958 lease for the purpose of protecting plaintiff against refusal by her to release any dower rights she might have possessed.[7] Second, and more importantly, the lease in *Wright* contained a promise which the deceased cotenant *herself* made; the only event occurring after her death was the exercising of the option, to which she had previously agreed. In the within case, by contrast, plaintiff wishes us to hold that the presence of a "joint contract" gave one joint contractor the right to make *new* promises (two additional five-year options) on behalf of the other joint contractor during the term of the lease, without consulting that other joint contractor, his heirs or assigns. This is simply not the holding of *Wright*. Such a holding would seem to convert every joint contract into some kind of agency agreement. Conse-

---

[6] *Id.,* pp 18-19.

[7] That if the lessors (Benjamin Kert and Esther Kert) received an offer to buy, Shell could meet that offer and purchase the premises.

quently, we do not believe *Wright* supports plaintiff's theory that in the 1958 lease Ben authorized and empowered his wife Esther to lease the entire property. On the other hand, neither does the dicta in *Wright* necessarily foreclose the possibility that Esther was entitled to do so.

In 1972, the only actual authority Esther Kert had, other than her unexercised dower right, was by virtue of the undivided half of the estate she was to receive under the will of her deceased husband and also that which she had as a signing party to the lease. Defendant argues that, for this reason, the amendment to the lease should be rescinded due to mutual mistake.[8] The mistake defendant sees is the alleged belief of both plaintiff and Esther Kert that either Esther Kert was the sole owner of the property in question, or else that she had authority to lease the entire property independently.

A contract may be rescinded because of mutual mistake of the parties. However, such rescission is an equitable remedy, which will be granted only in the sound discretion of the trial court.[9] Thus, for a mistake to mandate rescission, several hurdles must be cleared. First, there must have been a belief by one or both of the parties not in accord with the facts. The record here to support that conclusion is weak. For example, in the absence of a title search, it is hard to see how defendant could claim that Shell had a reasonable belief that Esther was a tenant by the entirety. Since Esther has not testified, it is equally difficult to find record support for defendant's claim that Esther believed she was a tenant by the entirety. Second, the erroneous belief must relate to a basic assumption of the parties upon which the contract is

---

[8] *Sherwood v Walker,* 66 Mich 568; 33 NW 919 (1887).

[9] *Dingeman v Reffitt,* 152 Mich App 350, 355; 393 NW2d 632 (1986).

made and which materially affects the agreed performances of the parties.[10] Even if we were to assume these tests are met (and we do not), there still would be the question whether rescission would be equitable.

In arguing that the alleged mistake here was one mandating rescission, defendant primarily relies on two cases whose facts are arguably similar. In *Moritz v Horsman*[11] and *Walter v Walter*[12] there were mistakes by contracting parties as to who possessed title or interest in property. Significantly, however, the Supreme Court in both of these cases stressed the equitable aspects of the facts. In *Moritz,* the Court said that rescission depends on whether the case falls within "the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties."[13] In *Walter,* the Court closed its opinion by noting the avarice of the son who was attempting to deprive his father of his home.[14]

Here, we can see no unjust enrichment to Shell because of the extension of the lease. Defendant does not argue that the rental price agreed upon is unfair or insufficient, nor that unfair advantage was taken of Esther Kert by plaintiff. Indeed, rescinding this contract would thwart the $200,000 that Shell claims it expended in apparent reliance on this contract, as well as perhaps enriching *defendant* by the value of the improvements with-

[10] *Id.,* pp 355-356.

[11] 305 Mich 627; 9 NW2d 868 (1943).

[12] 297 Mich 26; 279 NW 58 (1941).

[13] *Moritz,* 305 Mich 634, quoting *Reggio v Warren,* 207 Mass 525, 534; 93 NE 805 (1911).

[14] *Walter,* 297 Mich 31.

out any fair payment for those improvements.[15] In any event, even were we to decide from these ambiguous facts that such a mistake was made, the equitable considerations are not such to warrant our holding that the trial court abused its discretion on this issue. Consequently, we decline to rescind the amendment for mutual mistake.

Next, we address the question whether Esther Kert, as a party to the lease and with a cotenant's interest in the property, had the power to bind her cotenants, the other heirs of Benjamin Kert's estate, by amending the lease to grant Shell an option to extend the lease for another ten years to 1994 at an increased rent. If not, then we must determine what remedy is appropriate for this situation.

It is interesting to note that the trial court made two apparently inconsistent rulings on this question. At the hearing on the motions for summary disposition, the judge made the following remark:

> I am not going to rescind the 1972 amendment. I'm not going to do that. And I'm going to indicate that Esther Kert and the defendants own the subject property as tenants in common, and that Esther Kert was able to bind herself *to her interest only* in executing this particular matter. [Emphasis added.]

Yet, in the order dated June 23, 1986, the trial court held:

> IT IS HEREBY ORDERED AND ADJUDGED . . . that Plaintiff, SHELL OIL COMPANY's lease rights pursuant to the terms of a lease amendment with Defendant, Esther Kert, dated June 29, 1972, . . . in-

---

[15] The lease permits Shell to remove improvements on expiration. Consequently, defendant would not be enriched unless the improvements were left behind.

cluding the options extending the term of the original lease agreement between Shell Oil Company and Ben and Esther Kert, dated July 10, 1958, are valid *and bind the heirs at law* of Ben Kert. [Emphasis added.]

We share the trial judge's difficulty in resolving this hard issue. As a party to the lease, Esther Kert could exercise any rights that might fairly be said to arise from the lease. We do not believe that giving Shell options to extend the lease for ten additional years falls within that area of power. Merely because she was a party to the lease did not give her that power. But, when she did sign an agreement with Shell in 1972 to give Shell options to extend the lease from 1984 to 1994, the heirs stood by and did nothing. Under Benjamin Kert's will, Esther Kert received a one-half interest in the real property and thus, eventually after 1984, she became a tenant in common as to that fraction.[16] At the very least, she could grant an option to extend the lease for another ten years with respect to her undivided half interest as tenant in common. Should the estate be granted what amounts to a belated veto power over Esther's actions in amending the lease with respect to the other undivided half? We think not in view of the facts in this case.

While in general, absent any agency, a lease or other disposal of real property by one cotenant can bind her share of the property *only* and is not binding on the remaining cotenants,[17] that is not the whole story here. Esther Kert was a party to the 1958 lease. After her husband died in 1969,

[16] This assumes Esther Kert elected to take under Ben's will. The record that we review does not clearly indicate which election Esther made.

[17] *Walker v Marion*, 143 Mich 27; 106 NW 400 (1906); *Moreland v Strong*, 115 Mich 211; 73 NW 140 (1897).

she received the rent from Shell under the lease. In 1972, she and Shell agreed in apparent good faith for the two additional five-year extensions of the lease at an increased rent that would, if exercised, give Shell possession until 1994. There can be no question that Esther Kert, as a tenant in common as to an undivided half interest, could bind her fractional share. The heirs who are the children and grandchildren chose to stand by and do nothing from 1969, when Ben died, until 1984, when proceedings for probate of his estate were commenced. The rent that was paid was assumed to be for the entire premises, not for an undivided half interest in the premises. The expenditures made by Shell were in reliance upon the written amendment of 1972 and the duly exercised options. Under these circumstances, the estate of Ben Kert and the named heirs are bound by the 1972 amendment or, at the very least, are equitably estopped at this late date from forcing a renegotiation of the lease. Any other result would be grossly inequitable. In this connection, we also note that defendant estate and defendant heirs do not include in their pleadings a prayer for relief against Esther Kert.

We have already said that we will not rescind the 1972 amendment that grants the extension to 1994. Equity demands, however, that the estate, or at least the heirs, have some right of accounting and compensation for the ten-year added encumberance of its interest in the property. We believe, and indeed the parties seem to agree, that the estate is entitled to an accounting from its cotenant for the last ten years of the extended lease, namely, the period from 1984 to 1994. Further, MCL 554.138; MSA 26.1108 expressly gives a tenant in common a right of action against its cotenant "for receiving more than his just proportion of

the rents or profits of the estate owned by them as
. . . tenants in common." The parties' only dis-
agreement seems to be over the identity of the
cotenant referred to in the statute. Defendant says
that the statute refers to plaintiff, and plaintiff
says that it refers to Esther Kert.

In support of its argument that it is entitled to
recover from plaintiff instead of Esther Kert, de-
fendant cites the ninety-five-year-old case of *Fenton v Miller*[18] for the proposition that when a lease
is given by one of two or more persons owning the
premises as tenants in common, the lessee be-
comes, for the term of the lease, substantially a
cotenant of the nonjoining party. We are unable to
find such a holding in *Fenton*. In fact, neither
party has cited us a Michigan case which clearly
rules on this issue.

We reason this way. Had the estate and Esther
Kert *jointly* granted a lease to plaintiff, each
would be entitled to a portion of the rent received
from plaintiff commensurate with its fractional
share as a tenant in common. Then, had Esther
Kert received more than her commensurate net
share of the rent less allocable expenses, the estate
would be entitled under the statute to bring an
action for recovery of the excess. No one could
fairly suggest, however, that either the estate or
Esther Kert would, in that situation, be entitled to
a share of the profits received by *plaintiff* during
its lease of the property from them. The expected
profit of a tenant is one of the important elements
a landlord considers when setting the amount of
the rent. We do not believe that the estate should
now be entitled to some share of plaintiff's profits
merely because plaintiff rented an undivided half
of the property instead of the whole thing, while

[18] 94 Mich 204, 214; 53 NW 957 (1892).

paying rent under the supposition that it *had* rented the whole thing. Had Esther Kert herself realized profits other than rent from the property, it would seem that the estate would be entitled to a share.[19] The only thing she obtained, however, was rent. Plaintiff is not a cotenant with the estate merely because Esther Kert is plaintiff's landlord. The only right of recovery the estate has is against Esther Kert.

In summary, for the reasons delineated in this opinion, we hold that (1) defendant's request for rescission of the lease on the ground of mutual mistake is denied, (2) the rights of plaintiff Shell under the lease of July 10, 1958, including the amendment to the lease of June 29, 1972, granting plaintiff Shell options to extend the lease to a date in 1994, are held valid, (3) under the particular facts of this case, the lease amendment of June 29, 1972, is binding upon the estate of Benjamin Kert and the heirs named in this proceeding and, therefore, we decline to award the estate of Benjamin Kert and the named heirs any relief against Shell; (4) defendants, Esther Kert, the estate of Benjamin Kert, Janet Scheinfield Levenson, Betty Schwartz, Samuel Scheinfield, Dennis Scheinfield, and Harriet Housman, personal representative of the estate of Benjamin Kert, are tenants in common with respect to their interests in the real property, and (5) defendants, the estate of Benjamin Kert, Janet Scheinfield Levenson, Betty Schwartz, Samuel Scheinfield, Dennis Scheinfield, and Harriet Housman, personal representative of the estate of Benjamin Kert, are entitled to an accounting from Esther Kert for net rents received by her from Shell under the lease for the period starting with the effective date in 1984 when the first option under the lease amendment of June 29, 1972, was

---

[19] *Walton v Walton,* 287 Mich 557; 283 NW 687 (1939).

exercised and for the balance of the lease as extended, but not for the period prior to 1984.[20]

Consistent with this opinion, the trial court's judgment is affirmed in part and reversed in part. No costs, neither party having prevailed in full.

---

[20] The pleadings do not make it clear that the daughters and the grandchildren desire an accounting from Esther Kert. Thus, the accounting to which we refer is left for their decision.