STATE OF MICHIGAN
COURT OF APPEALS

GORDON RIEWE, d/b/a AUCTION
ASSOCIATES,

Plaintiff-Appellee,

v

LARRY BARON,

Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 321318
Lapeer Circuit Court
LC No. 11-044259-CK

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

In this contract dispute, defendant appeals as of right the circuit court's order granting judgment to plaintiff. We affirm.

I. BACKGROUND

This case involves a contract between plaintiff auctioneer Gordon Riewe and defendant pawnshop owner Larry Baron to auction defendant's art collection. Plaintiff's business, Auction Associates, was based in Lapeer, Michigan. Defendant's business, Dave's Casa De Empeno (translation: Dave's Pawn Shop) was based in El Paso, Texas. Plaintiff and defendant met through one of plaintiff's friends, Mark Lechner. Plaintiff made contact with defendant after being informed that defendant had an impressive art collection. Plaintiff viewed the collection in El Paso and the parties entered into a contract to auction "approximately 400 antique oil paintings and other merchandise." The contract provided a sliding commission scale based on millions sold. The contract required that plaintiff bear the cost of the auction. It also provided that in the event of a weak sale, plaintiff would receive a $200,000 commission. It is undisputed that both parties anticipated high profits.

Problems arose with the sale shortly after the contract was signed. A substantial part of the inventory was composed of what were represented as Spanish Colonial artwork pieces for which defendant did not produce receipts. Plaintiff retained experts, with defendant's approval, to determine the artwork's origin and it became apparent that the Spanish Colonial artwork might

be implicated by a United States-Mexico treaty.[1]  The Spanish Colonial part of defendant's collection, approximately 300 pieces, could not proceed to auction without further investigation.

Both parties agreed to continue the auction with the remaining 115 pieces.  Plaintiff asked for an advance to cover costs, which defendant declined, and a compromise advance of $10,000 on the commission was paid.  The auction yielded proceeds of only $55,515.  Plaintiff demanded payment of the $200,000 commission, minus the $10,000 advance, that he was promised under the contract in the event of a weak sale.  Defendant refused to pay that amount, plaintiff filed suit, and a bench trial ensued.  Defendant argued in court that he should be afforded the remedies of rescission, reformation, or avoidance of the contract when the parties contracted under the mistaken belief that all of defendant's art collection could be sold and were unaware of the impact of the United States-Mexico treaty at the time of contracting.  Defendant also argued that the purpose of the contract was frustrated and impossible to perform because of the treaty.  The trial court rejected defendant's arguments, determined that a valid contract existed, and ordered defendant to pay plaintiff $134.860.75.

## II.  STANDARD OF REVIEW

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo."  *Chelsea Inv Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010).  A finding of fact is clearly erroneous if it lacks evidentiary support and "this Court is left with a definite and firm conviction that a mistake has been made."  *Id*. at 251.

"Equitable issues, such as arguments for rescission or reformation, are . . . reviewed de novo."  *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013).  Issues pertaining to contract interpretation also present questions of law that are reviewed de novo.  *Rory v Cont'l Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## III.  ANALYSIS

Defendant argues to void, rescind, or reform the contract on three grounds: mutual mistake of fact, frustration of purpose, and impossibility of performance.  The trial court determined the facts of this case did not support any of the three defenses.  We agree with the trial court.

### A.  Mutual Mistake of Fact

Defendant first argues that the contract be rescinded, reformed, or voided based on mutual mistake of fact.  We conclude otherwise.  Defendant reasons that both parties were under the mistaken belief that defendant's entire art collection could go to auction because neither party knew of the existence of a United States-Mexico treaty.  Defendant contends that the treaty's

---

[1] Treaty of Cooperation Between the United States of America and the United Mexican States Providing for the Recovery and Return of Stolen Archaeological and Cultural Properties.

effect of limiting the pieces to be auctioned from approximately 400 to only 115 materially changed the agreement between the parties and their respective performances.

"Rescission of a contract is an equitable remedy to be exercised in the sound discretion of the trial court." *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 586-587; 458 NW2d 659 (1990). "A contract may be rescinded because of mutual mistake of the parties." *Shell Oil Co v Estate of Kert*, 161 Mich App 409, 421; 411 NW2d 770 (1987). A mutual mistake is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). "A court need not grant rescission in every case in which the mutual mistake relates to a basic assumption and materially affects the agreed performance of the parties." *Stanton v Dachille*, 186 Mich App 247, 260; 463 NW2d 479 (1990).

"Reformation is an equitable remedy by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error has been committed." 27 MLP 2d, Reformation of Instruments, § 1. "[T]he burden of proof is upon one seeking reformation of a written instrument." *River Rouge Bank v Fisher*, 372 Mich 558, 562; 127 NW2d 426 (1964). "[C]ourts are required to proceed with the utmost caution in exercising jurisdiction to reform written instruments." *Olsen v Porter*, 213 Mich App 25, 28; 539 NW2d 523 (1995). "The general theory of reformation is that where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on the one side and fraud on the other, the instrument does not express the true intent of the parties, equity will reform the instrument so as to express what was actually intended." *Ross v Damm*, 271 Mich 474, 480–481; 260 NW 750 (1935). "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003). Unambiguous contractual provisions are "reflective of the parties' intent as a matter of law." *Quality Products and Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Stanton v Dachille*, 186 Mich App 247, 256; 463 NW2d 479 (1990).

There was a mutual mistake of fact regarding how many items from the defendant's collection would be sold at auction. The contract provided that the "[i]nventory to be sold consists of approximately 400 antique oil paintings and other merchandise at the discretion of the seller." The parties agree that the contract covered defendant's entire collection of antique European, American and Spanish Colonial art and that 400 was an estimate of the number of items in the collection. There was no evidence that the parties to the contract were aware of the treaty that reduced the number of pieces eligible to be sold to 115 when they signed the contract. The parties signed the contract with the erroneous belief that defendant's entire collection could be auctioned. However, as discussed below, the parties waived any right to rescind based upon this mutual mistake.

"Waiver is the intentional relinquishment or abandonment of a known right." *In re Contempt of Dorsey*, 306 Mich App 571, 590; 858 NW2d 84 (2014). After the mutual mistake of fact was discovered here, it was waived when defendant expressly accepted the contract for

-3-

auction of only 115 items. See *Miller v Smith*, 276 Mich 372, 375; 267 NW 862 (1936) (where a condition of the contract was waived based on the performance of the parties). The trial court correctly found that both parties waived any mistake and consented to going forward with the auction as planned and that defendant's agreement in particular, to press on with the sale, obligated defendant to the commission terms of the contract. Lechner testified that once all became aware of the treaty, he and plaintiff approached defendant and asked him if he wanted to continue with the auction and defendant said "absolutely." Plaintiff testified that he asked defendant multiple times if they could "just walk away" from the auction and defendant said, "Absolutely not. I want to sell everything except the Spanish Colonial Art." Defendant agreed that he orally authorized the sale of the 115 items and that he was told he could withdraw from the sale. Subsequent to agreeing to go forward with the reduced sale, defendant failed to express or act in opposition to the auction process.

## B. Frustration of Purpose

Defendant next argues that the contract should be rescinded, reformed or avoided based on the frustration of purpose doctrine. We disagree. Defendant reasons that neither party fully performed the contract and that both parties knew that the purpose of the contract was to auction defendant's entire collection. Defendant argues that the core purpose of the contract was frustrated when a majority of the collection was held back from auction based on the United States-Mexico treaty.

"The frustration-of-purpose doctrine provides an excuse for nonperformance of a contractual obligation." *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC,* 276 Mich App 146, 159; 742 NW2d 409 (2007). The doctrine of frustration of purpose requires the following conditions to be met:

> (1) the contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him. [*Liggett Restaurant Group, Inc*, 260 Mich App at 134-135 quoting *Molnar v Molnar*, 110 Mich App 622, 626; 313 NW2d 171 (1981).].

Defendant can only meet two of the above three conditions. The contract in this instance had not been fully performed when the impact of the treaty was realized by the parties. The trial judge did not make an express finding of fact as to the essential purpose of the contract. While profit was the goal of the contract, some argument could be made that the purpose of the contract was to liquidate plaintiff's collection for a profit. The frustration of purpose doctrine is inapplicable to this case because there is no basis to find that there was an unforeseen event. While neither party to the contract knew of the treaty at the time the contract was made, the treaty preceded the contract and therefore was discoverable upon reasonable investigation. Failure to investigate a fact does not render it unforeseeable, just unforeseen.

The treaty also did not frustrate the purpose of the parties' contract because defendant waived any original intent to auction approximately 400 items when, after discovering the treaty, he decided to continue to auction with only 115 items. Thus, even if the original intent was to liquidate defendant's inventory, the purpose of the parties' agreement morphed from the sale of at least 400 items, to the sale of 115 items with the ultimate purpose of yielding a profit. When given the option to postpone the auction after learning of the treaty, defendant said, "I gotta do an auction. I need the money." "The Frustration of Purpose Doctrine does not apply to errors in prediction as to future occurrences or non-occurrences. A party cannot enter into a contract, expecting to make a profit, and then demand rescission when the deal turns out to be less lucrative than he had hoped." *Tri–State Rubber & Equipment, Inc v Central States Southeast & Southwest Areas Pension Fund*, 677 F Supp 516, 520 (ED Mich, 1987).

## C. Impossibility of Performance

Defendant lastly contends that he should be afforded rescission, reformation or avoidance of the contract based on impossibility of performance. Again, we disagree. Defendant argues that plaintiff's $200,000 commission in the event of a weak sale was based on full performance of the contract, which defendant interprets as the auctioning of the entire collection of "approximately 400 antique oil paintings and other merchandise." Defendant reasons that exclusion of the Spanish Colonial art from auction made full performance of the contract impossible.

"A promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform." *Roberts v Farmers Ins Exchange*, 275 Mich App 58, 73-74; 737 NW2d 332 (2007). "Impossibility of performance may be classified as original impossibility or supervening impossibility. The former is impossibility of performance existing when the contract was entered into, so that the contract was to do something which from the outset was impossible; whereas supervening impossibility is that which develops some time after the inception of the contract." *Rogers Plaza, Inc v SS Kresge Co*, 32 Mich App 724, 743; 189 NW2d 346 (1971) (quotation omitted). Defendant relies on supervening impossibility.

Defendant's argument that the contract was impossible to perform is unavailing. Plaintiff fully performed his obligations under the contract. Plaintiff determined and publicized a date and a place for the auction. Plaintiff catalogued the items to be sold. Plaintiff advanced all monies related to producing the auction. Plaintiff submitted a settlement sheet to defendant within 14 days of completion of the auction. As discussed above, defendant waived performance of the contract to auction 400 items and authorized the auction of 115 items instead. Defendant cannot be afforded the equitable remedies of rescission or reformation under an impossibility defense when he excused original performance of the contract.

## D. Additional Grounds

Defendant also requests the contract be reformed to reflect the performance of the parties such that defendant should only be responsible for paying plaintiff's actual expenses and a 15 percent sales commission. We find no support for this argument. The commission scale was as follows:

Commission schedule [Plaintiff] Gordon Riewe will be paid 15% of first two million of sales, 12% of sales from two to five million, and 10% of the balance of the sale. . . . [Plaintiff] Gordon Riewe in the event of a weak sale will receive a two hundred thousand dollar commission to cover cost of producing said sale.

Neither party argues that the terms of the contract are ambiguous. Plainly read, the amount of commission received under the contract is based on either: 1) the event of a "weak sale", or 2) a certain amount of millions sold. Neither party refutes that the auction was a weak sale. Therefore, the weak sale provision of the contract should apply. A 15 percent commission, according to the contract, is only paid when auction sales reach two million dollars. The net proceeds of approximately $55,000 for defendant's auction did not trigger the 15 percent commission under the terms of the contract.

## IV. CONCLUSION

The trial court made no error of law in finding that when the defendant specifically authorized the reduction of the inventory to be sold, he could not rely on that reduction to seek equity and void, rescind, or reform the rest of the contract. The trial court found that defendant authorized the reduction in the inventory that was to be sold at auction. We defer to the trial court's findings of fact when they are not clearly erroneous. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). The defendant has not directly argued nor otherwise persuaded us that the court's fact-finding was erroneous.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola